MEMORANDUM *
Because the parties are familiar with the pertinent facts, we do not state them here.
I
Safety National Casualty Corporation (SNCC) contends that its liability to Manhattan Reinsurance Company (MRC) should be reduced because MRC is currently receiving the benefit of an annuity originally purchased by its insured, Lavino Shipping Co. We disagree. The evidence before the district court showed that Lavino purchased the annuity on its own— without input or direction from MRC — to provide guaranteed funds to cover the compensation it owed to Frank Guthrie. There was no indication that Lavino or Crawford & Company acted as MRC’s agents. See Mottola v. R.L. Kautz & Co., 199 Cal.App.3d 98, 108, 244 Cal.Rptr. 737 (1988) (being an agent for a specific purpose does not make one an agent for all purposes). Instead, MRC first obtained the annuity in satisfaction of Lavino’s debts when it settled as a creditor during Lavino’s bankruptcy proceedings. The transfer of this asset does not alter SNCC’s duty to reinsure those losses on the Guthrie claim that exceed its $750,000 attachment point. We affirm the district court’s summary judgment to MRC on this claim.
II
SNCC also disputes its duty to reinsure the annual Department of Labor assessments MRC paid for many years pursuant to the Longshore and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 944(c)(2), because (1) the assessments are not the type of loss covered by SNCC’s reinsurance certificates and (2) MRC improperly aggregated the assessments so they would fall within SNCC’s level of indemnity. We hold that the assessments are covered by SNCC’s reinsurance certificates, but that MRC’s aggregation method is unreasonable.
Contrary to SNCC’s assertion, these assessments are not uninsurable “known losses” under California law. See Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 690, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995) (holding that even expected or inevitable risks can still be “unknown” and thus insurable if the ultimate amount of the risk is uncertain). MRC did not know whether it would have to pay assessments in any given year, or in what amount, so these assessments were not uninsurable risks.
SNCC’s certificates FRC-126 and FRC-140 both purport to reinsure all of MRC’s statutory liability to Lavino under the LHWCA. The certificates “follow the form” of the underlying Lavino policy, which specifically obligated MRC to pay for assessments into any special funds required by the LHWCA. We agree with the district court that the coverage provisions and the insuring clauses in SNCC’s *863 certificates pass this statutory liability on to SNCC.
However, we do not agree MRC may aggregate these annual assessments into one “claim” in order to receive reinsurance. In the cases cited by the district court, claims by multiple injured parties arising out of one common cause or incident were aggregated so that a single deductible would apply and more insurance could be recovered. See, e.g., Int’l Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates at Lloyd’s of London, 868 F.Supp. 917 (S.D.Ohio 1994).
This case is different, because the assessments — unlike injured worker claims — do not arise out of one single common cause. The duty to pay assessments is triggered each time by a different cause: the government’s yearly calculation of the amount an insurer must pay. See 33 U.S.C. § 944(c). This calculation and the assessment fees that result are separate events that occur once per year.
In the face of a contract’s silence on an issue like this, we may imply reasonable terms to give effect to the expectations of the parties at the time they entered the contract. See Binder v. Aetna Life Ins. Co., 75 Cal.App.4th 832, 852, 89 Cal.Rptr.2d 540 (1999) (citing Cotran v. Rollins Hudig Hall Int’l, Inc., 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412 (1998)) (reasonable meaning supplied when there was no specific evidence of intended agreement to the contrary). But in this case, MRC’s proposed aggregation method contradicts its own long-standing accounting practices and its expectations at the time it entered into this reinsurance contract.
For a little over twenty years, MRC allocated the assessments to Lavino and other insureds’ policies in an amount proportionate to the insurance it provided on those policies each year. MRC was then reimbursed in full for these assessments by its lower-level reinsurers and insureds like Lavino. This system worked without complaint by MRC, Lavino, the lower-level reinsurers, or SNCC from 1979 until Lavi-no’s bankruptcy and Eastport’s liquidation in the early 1990s. Given the lengthy course of dealing between MRC and SNCC, MRC cannot now aggregate twenty years’ worth of past assessments into a single “claim” to make the total amount exceed $750,000. Our decision to deny use of this aggregation method cannot be said to violate MRC’s reasonable expectations as a contracting party when MRC itself only began aggregating the assessments in this manner during the course of litigation in 2001.
We hold that SNCC’s duty to reinsure is only triggered if a single year’s worth of assessments paid by MRC exceeds $750,000.
Ill
Finally, the district court did not abuse its discretion by admitting MRC’s expert testimony about insurance industry contract drafting custom and practice. We have implicitly accepted a district court’s admission of expert testimony on industry custom and usage regarding contract clauses in facultative reinsurance agreements. See Nat’l Am. Ins. Co. v. Certain Underwriters at Lloyd’s London, 93 F.3d 529, 537 (9th Cir.1996). In this case, MRC’s expert was properly qualified through his past work experience, and he did not improperly testify about the legal interpretation of contract clauses. The district court did not abuse its discretion by crediting this expert testimony.
Each party shall bear its own costs.
AFFIRMED in part. REVERSED in part and REMANDED.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.