2014 COA 76M

SINCLAIR TRANSPORTATION COMPA-
NY, d/b/a Sinclair Pipeline Company, a
Wyoming corporation, Plaintiff–Appel-
lee,

v.

Lauren SANDBERG, Kay F. Sandberg,
Ivar E. Larson, and Donna M. Larson,
Defendants–Appellants.

Court of Appeals No. 13CA1235

Colorado Court of Appeals,
Div. II.

Announced June 5, 2014

As Modified on Denial of Rehearing
July 3, 2014

See also 284 P.3d 42.

Faegre Baker Daniels, LLP, John R. Sperber, Brandee L. Caswell, Sarah M. Kellner, Denver, Colorado, for Plaintiff–Appellee.

Dean & Reid, LLC, Daniel W. Dean, Fort Collins, Colorado; Polsinelli, PC, Bennett L. Cohen, Denver, Colorado, for Defendants–Appellants.

Opinion by JUDGE DAILEY

¶ 1 In this declaratory judgment action brought in the aftermath of an unsuccessful condemnation proceeding, defendants, Lauren Sandberg, Kay F. Sandberg, Ivar E. Larson, and Donna M. Larson (collectively, the landowners), appeal the district court's order granting partial summary judgment in favor of plaintiff, Sinclair Transportation

Company d/b/a Sinclair Pipeline Company (Sinclair). We affirm.

## I.   Background

¶ 2 Sinclair owns a pipeline system that transports petroleum products from Wyoming to Denver. To operate this system, Sinclair uses an easement that passes through the landowners' properties.

¶ 3 The easement, which was created by agreement in 1963, provided its owner and "its successors and assigns" with the right to "construct, maintain, inspect, operate, protect, repair, replace, change the size of, and remove" a single, six-inch pipeline across the landowners' property (the original pipeline).

¶ 4 Sinclair claimed ownership of the easement as a result of a series of sales and assignments. In 2006, it approached the landowners to propose amending the easement to allow it to build a second, ten-inch pipeline on the property (the new pipeline). When the landowners declined, Sinclair sought to acquire the right to install a second pipeline through a condemnation proceeding.

¶ 5 The district court determined that Sinclair had the authority to condemn the property for the additional pipeline. In 2007, Sinclair installed the new pipeline but did not put it into use. Ultimately, however, the supreme court concluded that Sinclair did not have statutory condemnation authority under section 38–5–105, C.R.S.2013. *See Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶ 1, 284 P.3d 42.

¶ 6 Thereafter, Sinclair abandoned the condemnation proceeding and instituted the present declaratory judgment action under C.R.C.P. 57 and section 13–51–106, C.R.S. 2013, to determine its rights under the easement and to prevent the landowners from unilaterally removing the new pipeline from their properties. Accordingly, the district court dismissed the condemnation proceeding and informed the parties that all remaining claims, including any claims by the landowners for surface damage caused by the installation of the new pipeline, would be addressed in the present case.[1]

¶ 7 Shortly after, the landowners filed several counterclaims in the declaratory judgment action.

¶ 8 Upon Sinclair's motion for partial summary judgment, the district court determined that, as a matter of law, Sinclair had the right to treat the new pipeline as a replacement of the original one so long as it removed the original one. The district court certified its partial summary judgment order as a final judgment under C.R.C.P. 54(b) for purposes of appeal.

¶ 9 The landowners did not initially move to stay the district court's order pending appeal. Consequently, Sinclair removed the original pipeline and began using the new one. Four months after the court issued its summary judgment order, the landowners moved to stay the order. The court denied the motion because Sinclair had "already fully executed" the order and there "was nothing left ... to stay."

## II.   Mootness

■ ¶ 10 Sinclair asserts that the landowners' appeal is moot because they failed to timely seek a temporary injunction or stay of the court's order allowing the use of the new pipeline and the removal of the original one. We disagree.

■ ¶ 11 If an issue has become moot because of subsequent events, an appellate court will ordinarily decline to render an opinion as to the merits of an appeal. *See Am. Family Mut. Ins. Co. v. Centura Health–St. Anthony Cent. Hosp.*, 46 P.3d 490, 493 (Colo.App.2002). A case is moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy. *Stell v. Boulder Cnty. Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo. 2004).

¶ 12 Here, following the court's entry of the order of partial summary judgment, Sinclair removed the original pipeline and put the new pipeline into use. The company argues, citing *Zoning Board of Adjustment v. DeVilbiss*, 729 P.2d 353 (Colo.1986), and

---

1. The propriety of the court's dismissal of the condemnation action is the subject of the land-

owners' appeal in *Sinclair Transp. Co. v. Sandberg*, 2014 COA 75M, 350 P.3d 915.

*Kester v. Miami–Yoder Joint School Dist. No. 60,* 146 Colo. 230, 361 P.2d. 124 (1961), that the landowners' appeal is moot because even if the court erred in entering summary judgment, it would be

> inequitable and unduly burdensome to force Sinclair to reinstall the [original pipeline] and then remove the [new pipeline], only to repeat the whole process again when Sinclair exercised its recognized right under the Easement to "replace and change the size of" a pipeline by re-installing the [new pipeline] it just removed.

¶ 13 The problem with Sinclair's argument is that it assumes that Sinclair would ultimately, at least, be entitled to exercise a right under the easement to "replace and change the size of" the original pipeline. But the point of the landowners' appeal is to deny that very right by arguing, inter alia, that Sinclair was not the proper party to enforce a right, if such a right existed; or, alternatively, that no right existed or is enforceable, either because the easement was not assignable to Sinclair or because parts of it had expired or been abandoned. If the landowners were ultimately to succeed on any of these assertions, various remedies could conceivably return the parties to their prior positions and compensate the landowners for ongoing trespasses committed by Sinclair. *See Hunter v. Mansell,* 240 P.3d 469, 479 (Colo.App.2010) ("[T]he traditional and preferred equitable remedy for a continuing trespass is a mandatory injunction requiring the removal of the encroachment."); *Hawley v. Mowatt,* 160 P.3d 421, 425 (Colo.App.2007) ("[I]n a continuing trespass case, a plaintiff may recover all past damages suffered during the applicable limitations period as a result of the defendant's trespass.... ").

¶ 14 Because, depending upon the outcome of the appeal, a meaningful remedy may still be available for the landowners, we conclude that their appeal is not moot.

### III. Summary Judgment Ruling

¶ 15 The landowners contend that the district court erroneously granted partial summary judgment to Sinclair because (1) Sinclair was not indisputably shown to have standing to assert rights under the 1963 easement agreement; (2) factual disputes existed as to whether, in any event, Sinclair had complied with conditions precedent to enlarging the pipeline; (3) Sinclair could not install the replacement pipeline without first either removing the original one or having the court consider the equitable remedy of relocating the easement; (4) the terms of the 1963 agreement allowing Sinclair to replace or enlarge the pipeline were not, as a matter of law, enforceable because they had been abandoned when Sinclair initiated the condemnation proceeding or because they had expired as a result of changed social conditions; and (5) several other miscellaneous reasons. We are not persuaded.

¶ 16 We review a summary judgment ruling de novo. *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007).

¶ 17 " 'The purpose of the summary judgment "is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail." ' " *Roberts v. Am. Family Mut. Ins. Co.,* 144 P.3d 546, 548 (Colo.2006) (quoting *Mount Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 238 (Colo.1984)). Because summary judgment is a drastic remedy, however, it is appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Sanchez v. Moosburger,* 187 P.3d 1185, 1187 (Colo.App.2008).

¶ 18 "Factual disputes will not defeat an entry of summary judgment if the disputed facts are not material to the outcome of the case." *Svanidze v. Kirkendall,* 169 P.3d 262, 264 (Colo.App.2007). A material fact is one that will affect the outcome of the case. *W. Innovations, Inc. v. Sonitrol Corp.,* 187 P.3d 1155, 1158 (Colo.App.2008).

¶ 19 "In addition to concerning a material fact, the issue in dispute must be 'genuine.' To avoid summary judgment, the evidence presented in opposition to such a motion must therefore be sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party." *Andersen v.*

*Lindenbaum,* 160 P.3d 237, 239 (Colo.2007) (quoting, with approval, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 ("If the evidence [opposing summary judgment] is merely colorable or is not significantly probative, summary judgment may be granted.") (citations omitted).

¶ 20 With these principles in mind, we now address the landowners' contentions.

## A. Standing

■■■ ¶ 21 "In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. Standing is a threshold issue that must be satisfied in order to decide a case on the merits." *Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004). A plaintiff has standing if (1) the plaintiff suffered an actual injury (2) to a legally protected interest. *Town of Erie v. Town of Frederick,* 251 P.3d 500, 503 (Colo.App.2010).

¶ 22 The landowners argue that Sinclair was not indisputably shown to have suffered a potential injury to a legally protected interest, and therefore does not have standing here, because (1) factual disputes exist as to whether Sinclair was a successor in interest to the original owner of the easement; and, in any event, (2) an easement of the type involved in this case could not be assigned to successors in interest. We are not persuaded.

### 1. Successor in Interest

■■ ¶ 23 Sinclair's motion for partial summary judgment referenced facts (contained in the affidavit of Sinclair's corporate counsel, his prior testimony, and documents memorializing the assignment of the easement rights) that traced the succession of ownership of the easement, as follows:

- Sinclair Pipe Line Company (Old Sinclair, which is not the same entity as Sinclair) obtained the easement in 1963 and installed the original pipeline;
- Old Sinclair transferred a fifty percent interest in the easement to Skelly Pipe Line Company;
- Skelly Pipe Line Company transferred its fifty percent interest to Pasco Pipeline Company (Pasco);
- Old Sinclair merged with another company to become ARCO Pipeline Company (ARCO);
- ARCO sold its fifty percent interest in the easement to an entity called Pasco, Inc., which immediately assigned the interest to Pasco;
- Pasco, which owned all rights in the easement at that point, dissolved and sold all of its assets to Sinclair Oil Corporation (the parent company of what is now Sinclair).

¶ 24 These facts demonstrated that Sinclair was a successor in interest to the easement.

¶ 25 The landowners did not present any facts to challenge this chain of title. Instead, they asserted only that Sinclair did not meet its burden because it had not produced documents showing each and every transfer.[2]

¶ 26 As the moving party, Sinclair had the burden of establishing the lack of a genuine issue of material fact through the use of sworn affidavits and other materials setting forth such facts as would be admissible in evidence. *See* C.R.C.P. 56(e) (affidavits shall refer to personal knowledge and set forth admissible evidence). The landowners have cited to us no authority, nor have we found any, indicating that the sworn testimony of corporate counsel would be inadmissible to prove Sinclair's successorship interest in the easement.[3]

¶ 27 And, inasmuch as the landowners produced no evidence putting at issue the statements and prior testimony of corporate coun-

---

2. Sinclair produced public records which memorialized the transfers from Old Sinclair to Skelly, from Skelly to Pasco, and from ARCO to Pasco. Sinclair's corporate counsel described the subsequent transfer of all assets from Pasco to Sinclair in his testimony, but Sinclair did not produce any documents showing this transfer.

3. Defendants have not asserted, either in the district court or here on appeal, that a statute of frauds would bar the use of such evidence to prove the assignment of an easement interest.

sel, the district court properly concluded that there were no genuine issues of material fact regarding Sinclair's status as a successor in interest to the easement. *See Buttermore v. Firestone Tire & Rubber Co.,* 721 P.2d 701, 702 (Colo.App.1986) (If the moving party meets its burden and the non-moving party fails to demonstrate a genuine issue of material fact, "the trial court has no alternative but to conclude that no facts remain to be determined and that, therefore, as a matter of law summary judgment is proper.").

¶ 28 In reaching this conclusion, we necessarily reject the landowners' argument that a "judicial admission" made by Sinclair during discovery created an issue of material fact regarding Sinclair's successorship interest in the easement.

¶ 29 "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute," and it is binding on the party making the admission. *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986).

¶ 30 Notably, Sinclair never admitted that it did not possess a successorship interest in the easement. Rather, Sinclair's "admission" was that it was unable to locate any documents showing it was a successor in interest to the fifty percent interest owned at one point by Skelly. Such an admission does not create an issue of material fact regarding the existence of the *transactions* underlying Sinclair's successorship interests.

### 2. Assignability of Easement

¶ 31 We also reject the landowners' contention that Sinclair lacked standing because ownership interests in the type of ease-

ment involved in this case cannot be assigned to a successor in interest.

¶ 32 An easement is "a right conferred by grant, prescription or necessity authorizing one to do or maintain something on the land of another which, although a benefit to the land of the former, may be a burden on the land of the latter." *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1234 (Colo.1998) (internal quotation marks omitted).

¶ 33 An easement can be either "appurtenant" or "in gross":

An easement appurtenant attaches to a parcel of land and is incapable of existence separate and apart from the land to which it is annexed. The property burdened by an easement appurtenant is known as the servient estate, and the property benefited by the easement is the dominant estate.

An easement in gross, in contrast, is not appurtenant to any estate in land and does not belong to any person by virtue of his or her ownership in land. It is a mere personal interest in, or right to use, the land of another.

*WRWC, LLC v. City of Arvada,* 107 P.3d 1002, 1004 (Colo.App.2004) (citations omitted).[4]

¶ 34 Here, the easement created by the 1963 agreement is an easement in gross: it does not relate to Sinclair's ownership of land, and it provides a right to use the land to operate the pipeline.

¶ 35 At common law in both England and the United States, "easements in gross, having no dominant estate to which to be attached, were considered personal to their holder and, as such, non-assignable." *Box L Corp. v. Teton Cnty.,* 92 P.3d 811, 816–17 (Wyo.2004); *see also* R.T. Kimbrough, Anno-

---

**4.** Although in *WRWC, LLC v. City of Arvada,* 107 P.3d 1002, 1004 (Colo.App.2004), a division of this court stated that easements in gross create neither a dominant nor a servient estate, this is not quite accurate: easements in gross do create servient estates. *See Carroll v. Carroll,* 355 S.W.3d 463, 466 (Ky.Ct.App.2011) ("Perhaps the most significant distinction between an easement appurtenant and an easement in gross is that an easement appurtenant has both a dominant and servient tenement; whereas, an easement in

gross has only a servient tenement...."); *Tanguay v. Biathrow,* 156 N.H. 313, 937 A.2d 276, 278 (2007) (with an easement in gross, "[t]here is a servient estate, but no dominant estate"); *cf. Salazar v. Terry,* 911 P.2d 1086, 1091 (Colo.1996) (stating, "if the owner of an easement in gross comes into ownership of an estate in *the servient tenement,* the easement terminates to the extent that the ownership of that estate permits the uses authorized by the easement" (internal quotation marks omitted) (emphasis added)).

tation, *Assignability and Divisibility of Easement in Gross or License in Respect of Land or Water*, 130 A.L.R. 1253 (1941) (" 'A man may have a way in gross over another's land, but it must, from its nature, be a personal right, not assignable nor inheritable.' " (quoting *Ackroyd v. Smith*, (1850) 138 Eng. Rep. 68, 10 CB 164)); *Grady v. Narragansett Elec. Co.*, 962 A.2d 34, 42 (R.I.2009) (describing this principle as "general rule of ancient vintage").

¶ 36 The landowners argue that this was the law in Colorado at the time the easement was created in 1963. In support of this assertion, they rely on section 2–4–211, C.R.S. 2013, which states that "[t] he common law of England so far as the same is applicable and of a general nature ... shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority."

■ ¶ 37 The General Assembly has the authority to modify or abrogate common law. *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). Section 38–30–101, C.R.S. 2013— which existed in 1963 as section 118–1–1, C.R.S. 1953—states that "[a]ny person, association of persons, or body politic or corporate which is entitled to hold real estate, or *any* interest in real estate whatever, shall be authorized to convey the same to another . . . ." (emphasis added).

■ ¶ 38 In ordinary usage, the term "any" means "without limit or restriction." *Shams v. Howard*, 165 P.3d 876, 881 (Colo. App.2007) (internal quotation marks omitted). Applying this usage, we conclude that the term "any interest in real estate whatever" encompasses easements, including easements in gross. *See generally De Reus v. Peck*, 114 Colo. 107, 111, 162 P.2d 404, 406 (1945) (although an easement "is a privilege existing distinct from the ownership of the land itself, nevertheless it is an interest in

land"); *WRWC, LLC*, 107 P.3d at 1004 (an easement in gross is an "interest in, or right to use, the land of another").

¶ 39 Our construction of section 38–30–101 is consistent with the modern approach to the alienability of easements in gross. *See* Restatement (Third) of Prop.: Servitudes § 4.6(1)(c) (2000) ("A benefit in gross is freely transferable."); 2 *American Law of Property* § 8.82, at 290 (1952) ("There seems to be no reason to deny to parties who create easements in gross the privilege of making them alienable if they wish to do so."); 4 *Powell on Real Property* § 34.16, at 34–163–65 (2013) (noting that "most" American courts agree that easements in gross are transferable, particularly where they are of a "predominantly commercial character" or the parties intend for them to be alienable);[5] *Miller v. Lutheran Conference & Camp Ass'n*, 331 Pa. 241, 200 A. 646, 651 (1938) ("There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable.").

¶ 40 Indeed, the traditional common law view that easements in gross were not transferable appears to have been based on the notion that they were, by nature, personal in character. However, courts have since recognized that whether such easements are "personal" or "transferable" depends on the intent of the parties who created them. *See* Restatement (Third) of Prop.: Servitudes § 1.5 cmts. (b), (c) (historically, courts labeled easements in gross as "personal" interests at a time when it was unclear whether such interests could be transferred but, today, courts recognize that interests held in gross "may be either transferable or personal" as determined by the parties' intent).

¶ 41 Thus, we conclude that, contrary to the landowners' assertion, the law did not

---

5. On the assignability of easements in gross created, as here, for commercial purposes, *see also* Restatement (Third) of Prop.: Servitudes § 4.6 cmt. (b) (2000) ("Although historically courts have often stated that benefits in gross are not transferable, American courts have long carved out an exception for profits and easements in gross that serve commercial purposes."); *Crane v. Crane*, 683 P.2d 1062, 1066 (Utah 1984)

("[M]odern cases generally state that easements in gross are transferable when they are commercial in character. This idea apparently began with cases involving easements in gross for railroads, telephone, telegraph and electric power lines, pipelines, and ditches. Easements of that type have been held transferable almost without exception from early times.").

prohibit the assignment of the easement in gross here from the original owner to its successors in interest.

¶ 42 Further, the language in the 1963 conveyance granting Old Sinclair and its "successors and assigns" the right to use the easement to construct, operate, and replace a pipeline unambiguously reflects the original parties' intent to make the easement freely alienable for such purposes. *See O'Donovan v. McIntosh,* 728 A.2d 681, 683 (Me.1999) (easement in gross was alienable "because the parties clearly expressed that intent in the language of the deed"); *see also, e.g., Sunset Lake Water Serv. Dist. v. Remington,* 45 Or.App. 973, 609 P.2d 896, 899 (1980) (use of the phrase "his associates and assigns" clearly indicated an intent that the easement be alienable); *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E.2d 803, 808 (1965) (grant to a corporation "and 'its successors and assigns' indicates an intention to attach the attribute of assignability" to an easement in gross); *Southtex 66 Pipeline Co. v. Spoor,* 238 S.W.3d 538, 546 (Tex.App.2007) (easement in gross was assignable where court order granting the easement stated that it would be used by the grantee and "its successors and assigns, as a common carrier pipeline").

¶ 43 For these reasons, the district court properly concluded that Sinclair owned the easement and thus had standing to seek a declaration of rights under it.

### B. Conditions and Compliance

¶ 44 Next, the landowners assert that the district court could not enter partial summary judgment because any right to replace the original pipeline is (1) subject to numerous conditions as to which factual disputes exist and (2) defeated by Sinclair's noncompliance with other parts of the agreement.

¶ 45 According to the landowners, the following conditions must be fulfilled before Sinclair has a right to replace or enlarge the pipeline: (1) installation of a pipeline on the easement is conditioned on "payment preceding access" and (2) use of the pipeline is conditioned on payment of surface damages, compliance with installation requirements,[6] and "centering" of the pipeline.

¶ 46 Initially, we note that the landowners do not cite any specific language in the agreement embodying most of these "conditions," let alone to any language indicating that they must be fulfilled *before* Sinclair may exercise the right to replace or enlarge the original pipeline.

¶ 47 Indeed, our own review of the easement language does not reveal any support for several of the asserted "conditions," much less for the characterization of any of them as "condition[s] precedent." *See N. Denver Bank v. Bell,* 528 P.2d 413, 414 (Colo.App. 1974) (not published pursuant to C.A.R. 35) (Parties to an agreement create a "condition precedent" where "the duty to perform a contract is predicated on the occurrence of certain conditions within a specified time, the unexcused failure to comply with such requirements discharges the duty of performance."); *see also Main Elec., Ltd. v. Printz Servs. Corp.,* 980 P.2d 522, 526 (Colo.1999) ("A contract term can be interpreted as either a condition precedent or a promise to perform depending on the parties' intent.... If there is any doubt as to the parties' intention, we interpret a clause in a contract as a promise rather than as a condition.").

¶ 48 Further, the landowners appear to conflate the concept of interpreting an agreement with that of evaluating compliance with the agreement. Here, Sinclair did not seek a declaration that its conduct conformed to all procedures outlined in the 1963 agreement—rather, it sought only a determination that it had *a right under the agreement* to install an enlarged pipeline. Accordingly, as the district court correctly noted, Sinclair's compliance with any remaining "conditions" of, or promises in, the 1963 agreement was not an issue before it at the partial summary judgment stage of this declaratory judgment action. *Cf.* C.R.C.P. 57(c) ("A contract may be

---

**6.** These were that the pipeline had to (1) be buried under a dirt cover of three feet; (2) be buried deeper over a six-hundred foot course "defined by some survey"; (3) have a corrugated conduit of fourteen inches in diameter and twelve feet in length at a particular survey point; and (4) have concrete poured at each end of the conduit.

construed either before or after there has been a breach thereof.").

¶ 49 Thus, to the extent that the 1963 agreement requires additional action by Sinclair *after* replacement of the pipeline, including remediation for surface damages, it did not preclude an entry of summary judgment. *Svanidze,* 169 P.3d at 264 ("Factual disputes will not defeat an entry of summary judgment if the disputed facts are not material to the outcome of the case.").

### C. Replacing the Original Pipeline

██ ¶ 50 The 1963 agreement is silent about the manner in which Sinclair could "replace, change the size of, and remove" the original pipeline.

¶ 51 Nonetheless, the landowners assert that the easement requires the removal of the original pipeline before a replacement line may be installed ("remove, then replace"). In contrast, Sinclair argues that the easement allowed it to construct a new, larger pipeline for use before having to remove the original pipeline ("replace, then remove").

██ ¶ 52 "Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1363 (Colo.App.1994). Consequently, "[i]n the face of a contract's silence on an issue like this, we may imply reasonable terms to give effect to the expectations of the parties at the time they entered the contract." *Manhattan Re–Insurance Co. v. Safety Nat'l Cas. Corp.,* 83 Fed.Appx. 861, 863 (9th Cir.2003); *see also Binder v. Aetna Life Ins. Co.,* 75 Cal. App.4th 832, 89 Cal.Rptr.2d 540 (1999) (reasonable meaning supplied when there was no specific evidence of intended agreement to the contrary); Restatement (Second) of Contracts § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the

circumstances is supplied by the court.") (quoted with approval in *Costello v. Cook,* 852 P.2d 1330, 1332–33 (Colo.App.1993)).

¶ 53 In our view, the only sensible manner in which to construe the easement is to permit Sinclair, consistent with custom and practice in the industry, to put down a new, larger pipeline before having to remove the older one. *See Williams v. N. Natural Gas Co.,* 136 F.Supp. 514, 517–19 (N.D.Iowa 1955) (company was not "required to locate its replacement line upon the site of the replaced line" and approving replacement line constructed fifty feet away from original in advance of removing the original); *Hall v. Lone Star Gas Co.,* 954 S.W.2d 174, 178–79 (Tex.App.1997) (company had the right to replace an old gas line by laying a new line "parallel to and some feet away from the original" and then removing the original); *Harris v. Phillips Pipe Line Co.,* 517 S.W.2d 361, 363–65 (Tex.Civ.App.1974) (company had the right to construct a replacement pipeline "parallel to and fifteen feet north" of old line before removing the old line).

¶ 54 To require Sinclair "to cease operating and remove the original line before replacing it would deny [Sinclair] the maintenance and operation rights granted by the easement" and "unduly burden [Sinclair's] ability to continue servicing its customers." *Hall,* 954 S.W.2d at 178; *see also Lazy Dog Ranch,* 965 P.2d at 1238 ("[T]he owner of the easement may make any use of the easement (including maintenance and improvement) that is reasonably necessary to the enjoyment of the easement, and which does not cause unreasonable damage to the servient estate or unreasonably interfere with the enjoyment of the servient estate.").

¶ 55 Thus, the district court properly determined that Sinclair did not "violate" the agreement by putting down the replacement pipeline before removing the original one.[7]

██ ¶ 56 As for a landowner's right to relocate an easement, we note that a bur-

---

7. Moreover, the resolution of this issue has no bearing on Sinclair's right to have the replacement pipeline positioned as it presently is; it would bear only on the amount of damages awarded to landowners for any trespass that may

have occurred while both pipelines were in the ground. Consequently, it would not, in any event, serve as a basis for reversing the district court's order.

dened property owner may relocate an easement to maximize the use of his or her property, provided that such relocation does not damage the benefited estate. *Clinger v. Hartshorn*, 89 P.3d 462, 469 (Colo.App.2003); *see also Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1234–37 (Colo.2001). If a burdened owner seeks to relocate an easement, he or she should seek a declaratory judgment from the district court that the alteration does not damage the benefitted owner. *Roaring Fork Club, L.P.*, 36 P.3d at 1238.

¶ 57 Here, the landowners never asserted a right to relocate the easement when challenging Sinclair's motion for partial summary judgment. Therefore, there was no genuine issue of material fact presented to the district court regarding relocation of the easement.

*D.   Abandonment of the Easement Through Use of Condemnation Proceedings; Expiration Through Changed Social Conditions*

¶ 58 To establish common law abandonment of an easement, a party must present clear, unequivocal, and decisive evidence of affirmative acts demonstrating the easement owner's intent to abandon the easement. *Westpac Aspen Invs., LLC v. Residences at Little Nell Dev., LLC*, 284 P.3d 131, 137 (Colo.App.2011). "[M]ere nonuse of an easement acquired by grant, however long continued, does not constitute an abandonment." *Westland Nursing Home, Inc. v. Benson*, 33 Colo.App. 245, 250, 517 P.2d 862, 866 (1974).

¶ 59 Here, the landowners argue that Sinclair "abandoned the contract right it now seeks to have interpreted" because it "acted as if the contract right to 'replace' had expired" when it sought to use condemnation authority to install the new pipeline. However, while Sinclair was aware of its easement rights when it initiated the condemnation action, it was not trying to vindicate its rights under the easement in that action. In that action, Sinclair sought to install the new pipeline and keep the original pipeline, but only after the landowners had refused to amend the easement to allow for two pipelines. Thus, Sinclair's decision to seek a second pipeline under condemnation authority had no factual bearing on whether it was "abandoning" its right under the easement to replace the original pipeline.

¶ 60 Nonetheless, the landowners assert that Sinclair elected a single remedy when it filed the condemnation action, and, therefore, the ultimate failure of that action resulted in abandonment of its contractual rights under the 1963 agreement.

¶ 61 "The doctrine of election of remedies is invoked where the remedial rights sought in a given situation are so inconsistent that the assertion of one necessarily repudiates the assertion of the other." *Colo. Nat'l Bank–Exch. v. Hammar*, 764 P.2d 359, 362 (Colo.App.1988).

¶ 62 Sinclair's attempt to use condemnation authority was entirely consistent with its easement rights. Sinclair was attempting, in both actions, to secure the same remedy— the right to maintain and operate the new pipeline—via two alternative legal theories. *See Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 31, 275 P.3d 750 ("A plaintiff is not required to elect between consistent remedies and need not assert every fact that may be in his favor when any one of several claims is sufficient to prevail." (citation omitted)); *see also* C.R.C.P. 8(a) ("Relief in the alternative or of several different types may be demanded.").[8]

¶ 63 Nor does the record reflect any basis for concluding that changed social conditions and Sinclair's installation of the new pipeline, which supposedly "imperils a subdivision and the residential development of the

---

8.   In a somewhat related argument, the landowners argue that the district court's order erroneously serves to validate Sinclair's inequitable conduct and trespass, which were accomplished under a "false claim of authority" to condemn the property. We reject this argument because, as the district court found, "the [original] line was installed under a lawful order of immediate possession for condemnation." *See* § 38–5–106, C.R.S.2013 (district courts have the authority to authorize immediate possession of a right-of-way to which a petitioner is entitled to enter under the right of eminent domain).

landowners," have caused the easement to "revert" back to them, thus preventing Sinclair from operating the new pipeline.

¶ 64 As in the district court, the landowners conclusorily argue that two "changed social conditions" affected Sinclair's right to enlarge its pipeline: (1) "[s]ociety has come to know the dangers of hazardous liquid pipelines" and has had a "change of social conscience" regarding these dangers; and (2) the original use of the pipeline impaired "agricultural production," whereas it now "runs through a residential subdivision."

¶ 65 "A conclusory statement made without supporting documentation or testimony is insufficient to create an issue of material fact." *Suncor Energy (USA), Inc. v. Aspen Petroleum Prods., Inc.*, 178 P.3d 1263, 1269 (Colo.App.2007); *see also People in Interest of J.M.A.*, 803 P.2d 187, 193 (Colo. 1990) ("A genuine issue of fact cannot be raised simply by means of argument by counsel."); *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo.App.2007) ("Mere conclusory statements are not sufficient to raise genuine factual issues.").

¶ 66 Further, the landowners offer no authority, nor are we aware of any, establishing "changed social conditions" as an independent legal theory limiting the use of an easement. Instead, they cite cases in which an initial grant of a property interest included an explicit clause reverting the property interest to the original owner if a certain condition occurred or ceased to exist. *See Sch. Dist. No. 6 v. Russell*, 156 Colo. 75, 396 P.2d 929 (1964); *Cole v. Colo. Springs Co.*, 152 Colo. 162, 381 P.2d 13 (1963); *Union Colony Co. v. Gallie*, 104 Colo. 46, 88 P.2d 120 (1939).

¶ 67 Citing these cases, the landowners appear to argue that society's altered views and their altered use of the land constitute conditions that trigger a reversion.

¶ 68 A grantor creates a reversionary interest when he or she intends for the granted "estate to last *for an indefinite time*, measured not in lives or in leaves but in terms of use or the continued existence of some thing or situation . . ., and to have the estate end *automatically* when the land is no longer used for [the granted] purpose or the prescribed situation no longer exists." *Sch. Dist. No. 6*, 156 Colo. at 80, 396 P.2d at 931.

¶ 69 In rejecting the landowners' argument, the district court found that nothing in the 1963 agreement indicated an intention to create a reversionary interest in the grantor. We, too, discern no intention to create a reversionary interest upon the occurrence or termination of a condition.

¶ 70 Moreover, it is entirely unclear to us how society's allegedly altered views on the dangers of hazardous liquid pipelines would affect Sinclair's property right to operate one.[9] Nor can we discern why the landowners' decision to shift use of the burdened land from agricultural to residential would extinguish Sinclair's known pipeline easement.

¶ 71 Thus, we perceive no basis for reversing the district court's order on these grounds.

### E. The Landowners' Remaining Arguments

¶ 72 The landowners' remaining arguments are not properly presented for our review.

¶ 73 Two of them—that is, that Sinclair's request for a declaratory judgment was time-barred by section 38–41–101, C.R.S. 2013, and that the right to enlarge the pipeline had no time limit in which it had to be exercised, thus violating the Rule Against Perpetuities—were never presented to the district court. *See Adams Reload Co. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1060 (Colo.App.2005) ("Arguments not presented to or ruled on by the trial court cannot be raised for the first time on appeal.").

¶ 74 Many others[10] are simply bald assertions of error that lack any meaningful expla-

9. Notably, Sinclair never offered any evidence that would create a question of material fact regarding the alleged alteration of society's views on the dangers of hazardous liquid pipelines.

10. These include, among others, arguments that the easement
- terminated because of a "substantial overburdening, a substantial deviation, and a substantial misuse of the contract easement," and

nation or support in legal authority. This sort of "argument" violates C.A.R. 28(a) and will not be addressed. *Holley v. Huang,* 284 P.3d 81, 87 (Colo.App.2011); *see also Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo.App.2010) ("We will not consider a bald legal proposition presented without argument or development. Counsel must inform the court both as to the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions." (citation omitted)); *United States v. Brocksmith,* 991 F.2d 1363, 1366 (7th Cir.1993) ("Undeveloped and unsupported claims are waived.").

¶ 75 Finally, we decline to address arguments that appear for the first time in the landowners' reply brief. *Holley,* 284 P.3d at 87.

### IV. *Attorney Fees on Appeal*

¶ 76 The landowners argue that they are entitled to attorney fees on appeal pursuant to section 38–1–122, C.R.S.2013. However, this provision provides for attorney fees in a condemnation action. Because this case is not a condemnation action, we conclude that this provision is inapplicable here.

### V. *Conclusion*

¶ 77 The order is affirmed.

JUDGE CASEBOLT and JUDGE BERGER concur.

• "expired by (1) nonuse, (2) estoppel when condemnation was selected, (3) changed conditions in the community (safety concerns arising through scientific advancement), (4) expiration of a reasonable time, and (5) extinction of the original grantee."