24CA0343 O'Hanlon v Gillette 05-22-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0343
Douglas County District Court No. 22CV98
Honorable Andrew C. Baum, Judge

Kenneth O'Hanlon,

Plaintiff-Appellant,

v.

Patrick Gillette and Tracie Noel Lechman,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

Kenneth O'Hanlon, Pro Se

Reynolds Gillette, LLC, Brian R. Reynolds, Denver, Colorado, for
Defendant-Appellee Patrick Gillette

No Appearance for Defendant-Appellee Tracie Noel Lechman

¶ 1     Plaintiff, Kenneth O'Hanlon, appeals the district court's judgment dismissing his claims against defendants, Patrick Gillette and Tracie Noel Lechman (jointly, the defendants).  We affirm.

## I.     Background

### A.     Factual History

¶ 2     O'Hanlon has been engaged in yearslong litigation related to a 2011 patent dispute, the complex procedural history of which has been discussed in several other state and federal cases.[1]

¶ 3     As pertinent here, O'Hanlon previously had a business relationship with AccessU2 Mobile Solutions, LLC (AccessU2).  However, AccessU2 sued O'Hanlon and obtained a judgment against him for various alleged torts based on his unauthorized use of AccessU2's proprietary business information, which was affirmed

---

[1] O'Hanlon has been a litigant in the following non-exhaustive list of cases: *E B H, LLC v. O'Hanlon,* (Colo. App. No. 16CA0828, Aug. 17, 2017) (not published pursuant to C.A.R. 35(e)); *O'Hanlon v. Hutchinson,* (Colo. App. No. 20CA1049, June 16, 2022) (not published pursuant to C.A.R. 35(e)); *O'Hanlon v. AccessU2 Mobile Solutions LLC,* (Colo. App. No. 21CA1997, Feb. 16, 2023) (not published pursuant to C.A.R. 35(e)); *E B H, LLC v. O'Hanlon,* (Colo. App. No. 24CA0792, Apr. 17, 2025) (not published pursuant to C.A.R. 35(e)); *see also O'Hanlon v. AccessU2 Mobile Solutions, LLC,* Civ. A. No. 18-cv-00185, 2019 WL 1081079 (D. Colo. Jan. 22, 2019) (unpublished order).

on appeal. *See generally E B H, LLC v. O'Hanlon,* (Colo. App. No. 16CA0828, Aug. 17, 2017) (not published pursuant to C.A.R. 35(e)). From this original business dispute, multiple other cases were spawned, including Denver District Court Case No. 19CV200. In that case, O'Hanlon attempted to force the dissolution of AccessU2. The district court dismissed that case, awarded AccessU2 its attorney fees and costs, and reduced the award to a judgment (attorney fees judgment).

¶ 4     AccessU2 hired Gillette as counsel to assist with enforcing the attorney fees judgment. After O'Hanlon frustrated Gillette's attempts to obtain the information needed to enforce the attorney fees judgment, Gillette took steps to obtain the necessary information from Catherine Faulkner,[2] O'Hanlon's domestic partner. Gillette hired a process server to serve Faulkner with subpoenas to produce O'Hanlon's financial information and appear for a deposition. On August 9, 2022, the process server served Faulkner at the home she shared with O'Hanlon, but the process

---

[2] The district court referred to Catherine Faulkner as "Ms. Faulker" and "Ms. Faulkner"; however, the record supports that the correct spelling is "Faulkner."

server failed to include a mileage check as required by C.R.C.P. 45(b)(3). That same day, Gillette hired Lechman to serve the required mileage check and drove her to Faulkner's home for this purpose.

¶ 5 After Lechman made several attempts to serve the mileage check on Faulkner, O'Hanlon stepped out of the home and confronted the defendants (the incident). Lechman tried to leave the mileage check on the porch of the home, but O'Hanlon attempted to shove the mileage check down her shirt, followed her into the street, and then jumped on the hood of Gillette's car. The defendants called the police to report O'Hanlon's conduct. O'Hanlon's neighbor's security camera caught most of the incident on video, and the neighbor provided the video recording to the police.

B. Procedural History

¶ 6 O'Hanlon filed the lawsuit from which this appeal stems in October 2022. In his complaint (initial complaint) against the defendants, O'Hanlon asserted fourteen[3] claims for relief allegedly

---

[3] The last claim in O'Hanlon's initial complaint is titled "Claim Fifteen"; however, the preceding claim is "Claim Thirteen."

arising from the incident, including, among other things, harassment, assault, intentional inflectional of emotional distress, and trespass. The following month, O'Hanlon filed an amended complaint (first amended complaint) with nineteen similar claims. In April 2023, O'Hanlon filed another amended complaint (second amended complaint), with the court's permission, that asserted seventeen substantially similar claims for relief.

¶ 7 Between the filing of the first and second amended complaints, the defendants each filed a motion to dismiss (first motions to dismiss) and jointly filed a special motion to dismiss pursuant to section 13-20-1101, C.R.S. 2024, Colorado's anti-SLAPP[4] statute (special motion to dismiss).

¶ 8 In August 2023, Gillette filed another motion to dismiss (second motion to dismiss), and Lechman filed a "Partial Motion to Dismiss" (partial motion to dismiss). Both motions sought to dismiss O'Hanlon's second amended complaint. The court denied as untimely the second motion to dismiss and the partial motion to dismiss. However, the court issued an "omnibus" order (omnibus

---

[4] "SLAPP" stands for "strategic lawsuit against public participation." *Coomer v. Salem Media of Colo., Inc.*, 2025 COA 2, ¶ 3 n.1.

order), in which it granted in part and denied in part the defendants' first motions to dismiss by dismissing eight of the claims in O'Hanlon's second amended complaint. The court also ordered a hearing to be set on the special motion to dismiss.

¶ 9 A few days later, O'Hanlon filed a motion asking the court to "declare as moot" the portion of the omnibus order setting the special motion to dismiss for a hearing. O'Hanlon asserted that the second amended complaint "supplanted in its entirety" the initial complaint. And he argued that, because the court's omnibus order denied Gillette and Lechman's motions to fully or partially dismiss his second amended complaint, the issues raised by the defendants' first motions to dismiss were "moot." He further argued that the court's attempt to "bifurcate" the claims in the initial complaint from those in the second amended complaint was "jurisdictionally unenforceable."

¶ 10 The court denied O'Hanlon's motion, explaining that

> Defendants originally filed [the first] motions to dismiss and a combined special motion to dismiss certain claims in Plaintiff's [first] Amended Complaint filed Nov. 29, 2022. The claims in Plaintiff's Second Amended Complaint are substantially similar (and some are identical) to those in his [first] Amended

5

Complaint . . . , and thus the same arguments in the [first] motions to dismiss and special motion to dismiss applied to the claims in the Second Amended Complaint. Importantly, the filing of the Second Amended Complaint did not render moot the previously filed [first] motions to dismiss or the special motion to dismiss under the anti-SLAPP statute. The Court still needs to hold a hearing under the anti-SLAPP statute.

¶ 11 The court held a hearing on the special motion to dismiss in October 2023 and issued a thorough written order granting that motion in January 2024 (the judgment). The entry of the judgment ended the case because it dismissed the remaining claims in O'Hanlon's second amended complaint that the omnibus order had not previously dismissed.

¶ 12 O'Hanlon appeals, asserting that the court (1) lacked "jurisdiction" to dismiss his second amended complaint because the court relied on motions (the first motions to dismiss and the special motion to dismiss) that were "moot"; (2) abused its discretion by allowing the defendants to file their answers "out of time" and "belatedly" issuing its case management order (CMO); and (3) erred by considering the video of the incident from his neighbor's security camera in granting the special motion to dismiss.

## II.   O'Hanlon's Noncompliant Opening Brief

¶ 13    Initially, we note that, notwithstanding the certificate of compliance, O'Hanlon's opening brief doesn't comply with C.A.R. 28(a)(7). He fails to indicate whether his third issue — the court's alleged abuse of discretion by considering a video in granting the defendants' special motion to dismiss — was preserved and, if it was, to direct us to the precise location in the record where it was preserved. *See* C.A.R. 28(a)(7)(A). And with respect to his first and second issues, he fails to cite any authority supporting his arguments. *See* C.A.R. 28(a)(7)(B).

¶ 14    We note that O'Hanlon has previously filed briefs that have failed to comply with various portions of C.A.R. 28. *See E B H, LLC v. O'Hanlon,* (Colo. App. No. 24CA0792, Apr. 17, 2025) (not published pursuant to C.A.R. 35(e)); *O'Hanlon v. Hutchinson,* (Colo. App. No. 20CA1049, June 16, 2022) (not published pursuant to C.A.R. 35(e)). While we exercise our discretion not to strike his opening brief, we put O'Hanlon on notice that his failure to comply with this court's procedures in any future appeals risks sanctions for such noncompliance.

### III. The Court Had Jurisdiction to Dismiss the Second Amended Complaint

#### A. Applicable Legal Principles and Standard of Review

¶ 15 "Subject matter jurisdiction concerns a court's authority to hear and rule on a certain class of cases and is conferred by the state constitution and statutes." *People in Interest of P.K.*, 2015 COA 121, ¶ 9; *Meggitt v. Stross*, 2021 COA 50, ¶ 39 (a court's subject matter jurisdiction concerns its authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment within that class). "The Colorado Constitution vests district courts with general subject matter jurisdiction in civil cases." *Levine v. Katz*, 167 P.3d 141, 144 (Colo. App. 2006) (citing Colo. Const. art. VI, § 9). "A [matter] is moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy." *Sinclair Transp. Co. v. Sandberg*, 2014 COA 76M, ¶ 11.

¶ 16 We review de novo whether a court has subject matter jurisdiction if the facts are undisputed. *Black v. Black*, 2018 COA 7, ¶ 20. Likewise, we review de novo whether a matter is moot. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 23.

8

### B. Analysis

¶ 17    Although O'Hanlon's argument is not entirely understandable, he appears to contend the first motions to dismiss and the special motion to dismiss (collectively, the prior motions to dismiss) were rendered moot because he filed the second amended complaint after the defendants filed the prior motions to dismiss. Thus, we understand him to argue that the court therefore lacked authority to dismiss his second amended complaint by relying on the prior motions to dismiss.

¶ 18    O'Hanlon also asserts "the Court's ruling on March 9, 2023, can have no effect on the Second Amended Complaint." The court issued six separate rulings on March 9, 2023. But O'Hanlon fails to indicate which of the six rulings he refers to, and it is not our duty to search the record for evidence to support his bald assertions. *See Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996), *aff'd*, 940 P.2d 348 (Colo. 1997). Moreover, none of those six orders addressed the issue he raises on appeal: whether by relying on the "moot" prior motions to dismiss, the court lacked subject matter jurisdiction to dismiss his second amended complaint.

9

¶ 19    In support of his jurisdictional argument, O'Hanlon quotes language from *Continental Casualty Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518 (7th Cir. 1999), which says that "[a] case can become moot at any time[] and destroy the court's jurisdiction." But O'Hanlon fails to explain how the filing of his second amended complaint mooted the prior motions to dismiss, such that the court lacked jurisdiction because an actual controversy no longer existed. *See Sinclair Transp. Co.*, ¶ 11. On the contrary, by authorizing O'Hanlon to file the second amended complaint, the court determined that an actual controversy continued to exist despite the intervening prior motions to dismiss.

¶ 20    Moreover, a motion to dismiss is generally not considered a responsive pleading for purposes of C.R.C.P. 15(a). *Schulz v. Laszlo & Assocs., LLC*, 2025 COA 24, ¶ 15; *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 36 ("[A] motion to dismiss is not a responsive pleading . . . ."); *see Gandy v. Williams*, 2019 COA 118, ¶ 10 (noting that the defendants' motion to dismiss did not terminate the plaintiff's right to amend). *But see Cooper v. Shumway*, 780 F.2d 27, 29 (10th Cir. 1985) ("A motion to dismiss is treated like a responsive pleading when final judgment is entered before plaintiff

files an amended complaint."). In sum, a court can authorize a plaintiff to amend his complaint even if it dismisses some, but not all, of a plaintiff's claims. *See Schulz,* ¶¶ 15, 24. And here, the court didn't address the substance of the prior motions to dismiss until *after* O'Hanlon filed the second amended complaint. Thus, we reject O'Hanlon's assertion that by relying on the prior motions to dismiss, the court lacked subject matter jurisdiction to dismiss his second amended complaint.

¶ 21    O'Hanlon also fails to explain how the court otherwise lacked subject matter jurisdiction, nor can we discern from our review of the record a basis to conclude that the court didn't have authority to enter judgment on his second amended complaint. *See Meggitt,* ¶ 39. Accordingly, we discern no error.

## IV.    O'Hanlon's Other Contentions

¶ 22    O'Hanlon further asserts that the court abused its discretion by allowing the defendants to file their answers to his second amended complaint "out of time" and by "belatedly" issuing a CMO. O'Hanlon asserts that "[t]his not only is an [a]buse of [d]iscretion but violates [c]onstitutional [d]ue [p]rocess." But O'Hanlon fails to explain how the court's decision to allow the defendants to file their

11

answers late or the timing of its CMO was manifestly arbitrary, unreasonable, or unfair or was based on a misapprehension or misapplication of the law. *See Rains v. Barber*, 2018 CO 61, ¶ 8 (A trial court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law.) (citation omitted); *see Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 20 (courts have discretion under C.R.C.P. 6(b) to consider untimely responsive pleadings). Accordingly, we decline to further address this contention because it is a bald assertion presented without argument or development. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

¶ 23 Lastly, O'Hanlon asserts that the court erred when it considered the neighbor's video of the incident in reaching the judgment. Again, he fails to develop his argument or provide any legal authority in support of it. Notably, O'Hanlon failed to provide us with a transcript for the October 2023 evidentiary hearing at which the court received evidence on the special motion to dismiss. The court relied on the evidence presented at that hearing to reach its judgment. "It is the obligation of the party asserting error in a judgment to present a record that discloses that error, for a

judgment is presumed to be correct until the contrary affirmatively appears." *Schuster v. Zwicker*, 659 P.2d 687, 690 (Colo. 1983). Thus, we must assume the record from the evidentiary hearing supports the court's findings in the judgment. *See People v. Schupper*, 2014 COA 80M, ¶ 31 n.3 (noting that, because a hearing transcript was not contained in the record, the court "must assume this hearing supports the trial court's findings"). Accordingly, we also reject his assertion that the court erred by considering the video evidence in reaching the judgment.

## V.    Disposition

¶ 24    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.