CITY OF BLACK HAWK, Colorado, a Colorado home rule municipality, Petitioner–Appellee and Cross–Appellant,

v.

J.D. FICKE and Carrie Shields, Respondents–Appellants and Cross–Appellees.

No. 06CA1302.

Colorado Court of Appeals, Div. IV.

March 20, 2008.

Rehearing Denied April 17, 2008.

Certiorari Denied Oct. 6, 2008.

Hayes, Phillips, Hoffman & Carberry, P.C., Corey Y. Hoffman, Hilary Mogue Graham, Denver, CO, for Petitioner–Appellee and Cross–Appellant.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Golden, CO, for Respondents–Appellants and Cross–Appellees.

Opinion by Judge CASEBOLT.

In this condemnation proceeding brought by petitioner, City of Black Hawk, respondents, J.D. Ficke and Carrie Shields, appeal the order upholding the City's abandonment of the condemnation following trial and the partial award of attorney fees in their favor. The City cross-appeals, asserting that the court improperly awarded attorney fees to respondents. We affirm.

The City commenced this proceeding to acquire respondents' property for the construction of a municipal maintenance facility. The City sought and obtained a court order for immediate possession of the property.

Following a valuation trial, the jury determined that $637,500 was just compensation for the taking, which was over six times higher than the City appraiser's opinion of value, and $100,000 more than the valuation opinion of respondents' appraiser. The City, unhappy with the award, filed a notice of abandonment, seeking to abandon the condemnation.

Respondents contested the abandonment. The trial court held an evidentiary hearing, during which the City disclosed that it had discovered mining waste on the property that would require significant expense to remediate. The court authorized the City to abandon the condemnation, but awarded part of respondents' attorney fees to them. This appeal followed.

I.

Respondents assert that the trial court erred in allowing the City to abandon the condemnation. They contend that the court should have applied the doctrine of equitable estoppel to preclude the abandonment. We disagree.

The condemnor in an eminent domain proceeding retains the right to abandon the project and discontinue the proceedings at any time before payment or deposit of the sum awarded as compensation, notwithstanding that the condemnor may already have procured an order for possession and may actually have taken possession. *Johnson v. Climax Molybdenum Co.,* 109 Colo. 308, 310, 124 P.2d 929, 931 (1942). However, when the landowner has materially changed his or her position in good faith reliance on the condemnation proceeding, a court may apply principles of equitable estoppel to preclude the abandonment. *See Piz v. Housing Authority,* 132 Colo. 457, 463, 289 P.2d 905, 908 (1955).

To establish equitable estoppel, the party to be estopped must know the facts and must intend that its representation be acted on so that the other party is justified in relying upon the represented facts. Also, the party asserting estoppel must be ignorant of the actual facts and must have reasonably relied, to its own detriment, on the other party's conduct or misrepresentation.

*Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co.,* 12 P.3d 824, 828 (Colo.App.2000).

Whether the circumstances of a particular case reveal a representation and reasonable reliance giving rise to equitable estoppel is a question of fact for the trial court. We must accept findings of fact on review unless they are clearly erroneous. *Black v. Sw. Water Conservation Dist.,* 74 P.3d 462, 467–68 (Colo.App.2003).

Here, the trial court found that respondents did not change their position in reliance on the condemnation. The court acknowledged respondents' argument that the City's action had rendered their property worthless, but noted that it was not the condemnation and abandonment that had caused the loss of value. Instead, the court found that the property's value was affected by the City's acquisition of surrounding properties and its unwillingness to guarantee respondents the permits needed to develop the property. The record supports the trial court's findings.

Nevertheless, respondents assert that the *Piz* decision is similar on its facts to this case and precludes the abandonment. We disagree.

Unlike in *Piz,* where the landowner built a new bakery facility at a different location in reliance upon the condemnation action concerning the old bakery, the record here does not support a finding that respondents detrimentally relied on the City's acquisition. The only evidence that might suggest reliance was respondents' inability to sell or market the property during the pendency of the condemnation proceedings. However, that inability is a natural result of the proceeding and does not, by itself, compel a finding of detrimental reliance.

We also reject respondents' collateral contention that *Piz* authorizes a court to preclude abandonment even in the absence of reliance because the doctrine of estoppel "is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where without its aid injustice might result." *Piz,* 132 Colo. at 463, 289 P.2d at 908 (quoting *Johnson v. Neel,* 123 Colo. 377, 387, 229 P.2d 939, 944 (1951)). We do not read *Piz,* or the cases upon which it relies, as authorizing a court to apply estoppel when, as here, only bad faith (as discussed below), but not reliance, has been shown.

Accordingly, we reject this contention.

## II.

Respondents assert that the trial court erred in refusing to award all their attorney fees. On cross-appeal, the City argues that the trial court abused its discretion in awarding any attorney fees. Addressing these contentions in reverse order, we disagree with both.

## A.

Generally, absent an authorizing statute, attorney fees are not recoverable by respondents in condemnation proceedings. *Leadville Water Co. v. Parkville Water Dist.,* 164 Colo. 362, 365, 436 P.2d 659, 660 (1967). Section 38–1–122(1.5), C.R.S.2007, provides for an award of attorney fees under some circumstances, but this case was filed one day before that statute's effective date and thus it does not apply here.

Nevertheless, section 13–17–102(2), C.R.S. 2007, provides for an award of attorney fees against an attorney or party who pursues an action that in whole or in part lacks substantial justification.

" '[L]acked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4), C.R.S.2007. A vexatious claim or defense is one brought or maintained in bad faith. *Brown v. Silvern,* 141 P.3d 871, 875 (Colo.App.2005). Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious and conduct aimed at unwarranted delay or disrespectful of truth and accuracy. *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984).

Whether an award of attorney fees is proper is a matter committed to the discretion of the trial court. We will not disturb an award of attorney fees on review unless the trial court has abused its discre-

tion. *See Remote Switch Sys., Inc. v. Delangis,* 126 P.3d 269, 275 (Colo.App.2005).

Here, the trial court found that the City discovered mining waste on the property before the valuation trial and was aware that remediation could cost up to $310,000. Despite this knowledge, the City did not disclose the mining waste or the potential remediation cost to respondents or present the evidence at trial. The trial court found this to be bad faith and awarded respondents their attorney fees incurred after the City first learned of the mining waste.

We perceive no abuse of discretion in the trial court's decision. As the trial court stated, respondents might have opted for an entirely different course of action had they known about the mining waste. Armed with this knowledge, they might have reconsidered their asking price, sought a second opinion concerning the extent of the contamination, or made such information available to their appraiser. In our view, the City's decision not to reveal these significant facts was, if nothing else, disrespectful of truth and accuracy. *See W. United Realty,* 679 P.2d at 1069.

We reject the City's contention that it had no duty to disclose the information. Contrary to the City's contention, the rules of civil procedure, which include the disclosure requirements of C.R.C.P. 26, are applicable in eminent domain proceedings. *See Aldrich v. Dist. Court,* 714 P.2d 1321, 1323 (Colo.1986). Moreover, even if they were not otherwise applicable, the trial management order here required all parties to fully and timely comply with those provisions. *See* C.R.C.P. 26(a) (rule applies to categories of cases otherwise excluded from its operation when the court orders that it shall apply).

Disclosure duties under C.R.C.P. 26 include identifying persons who have information relevant to disputed facts (which would include property valuation here), as well as documents and data compilations relevant thereto. The rule also imposes a duty to supplement disclosures when the party learns that in some material respect the information previously disclosed is incomplete

or incorrect. C.R.C.P. 26(e); *Brown,* 141 P.3d at 875. These provisions exist to ensure that discovery information is updated in a timely manner to both promote accuracy and encourage settlement while preparing for trial. *Morgan v. Genesee Co.,* 86 P.3d 388, 394 (Colo.2004).

The City argues that it was precluded from revealing the discovery of mining waste by section 38–1–114(1), C.R.S.2007, which it asserts does not permit consideration of factors that come to light after the date it took possession. We disagree.

The statute provides, in pertinent part:

[T] he right to compensation and the amount thereof, including damages and benefits, if any, shall be determined initially as of the date the petitioner is authorized by agreement, stipulation, or court order to take possession or the date of trial or hearing to assess compensation, whichever is earlier. . . . In estimating the value of all property actually taken, the true and actual value at such time shall be allowed and awarded.

The plain language of the statute allows for the determination of true and actual value *as of* the date of possession. There is no disagreement here that the mining waste existed on the property *as of* the date the City took possession. Accordingly, section 38–1–114(1) would not preclude the introduction of that information simply because it came to light after the City took possession.

This conclusion comports with the general rule that knowledge about a property that is acquired after a taking occurs but before the amount of just compensation is determined is admissible, particularly in jurisdictions where, as in Colorado, "actual value" is the measure of compensation. *See* 4 Julius L. Sackman, *Nichols on Eminent Domain* § 12A.01 [7], at 13–14 (3d ed.2007); *see also State v. Shein,* 283 N.J.Super. 588, 599–600, 662 A.2d 1020, 1026 (App.Div.1995) (after-acquired information about the actual physical condition of condemned property must be considered by the fact finder in determining just compensation).

In light of this analysis, we also reject the City's contention that such information lacked relevance under CRE 401 and 402.

### B.

We likewise reject respondents' assertion that the trial court abused its discretion because it did not award them all their attorney fees. The court's award of the attorney fees incurred by respondents after the date the presence of mining waste was first known to the City is well within the court's discretion, given that it found bad faith by the City only as to its failure to disclose the mining waste and the likely remediation cost.

■ Contrary to respondents' contention, we perceive nothing in the general scheme of the eminent domain statute or in article II, section 15 of the Colorado Constitution that obviates the general prohibition against an award of attorney fees in condemnation proceedings. *See Leadville,* 164 Colo. at 365, 436 P.2d at 660 (Colorado Constitution does not require that respondents recover their attorney fees in eminent domain proceedings).

■ Nor do we perceive that such fees are includable as costs under *Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805 (Colo.1993). Attorney fees are not included in the class of expenses usually taxed as costs. *Leadville,* 164 Colo. at 365, 436 P.2d at 660.

We further reject respondents' contention that the City was not "authorized by law to acquire" this property within the meaning of section 38–1–122(1), C.R.S.2007, because it failed to properly proceed in this action.

In *Platte River Power Authority v. Nelson,* 775 P.2d 82, 83 (Colo.App.1989), upon which respondents rely, a division of this court affirmed an award of attorney fees under that statutory provision following dismissal of the condemnation action because the petitioner had failed adequately to describe the acquisition, which was a fatal de-

fect in the petition. Thus, the division held, the condemnation was not authorized by law.

■ But those circumstances are not present here. The City's bad faith in one aspect of the litigation does not violate the condemnation statutes, as in *Nelson,* and therefore is not a fatal defect that affects its authorization to proceed.

### III.

■ Because we do not find the issues or arguments raised by the City to be frivolous, groundless, or in bad faith, we reject respondents' request for attorney fees on appeal. *See* C.A.R. 38(d); *Front Range Home Enhancements, Inc. v. Stowell,* 172 P.3d 973, 977 (Colo.App.2007)(appellate attorney fees are awardable under section 13–17–102, C.R.S.2007, only if the appeal itself is frivolous).

The order is affirmed.

Judge WEBB and Judge STERNBERG *, concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.