2014 COA 75M

**SINCLAIR TRANSPORTATION COMPANY, d/b/a Sinclair Pipeline Company, a Wyoming corporation, Petitioner–Appellee,**

v.

**Lauren SANDBERG, Kay F. Sandberg, Ivar E. Larson, and Donna M. Larson, Respondents–Appellants.**

Court of Appeals No. 13CA0958

Colorado Court of Appeals, Div. II.

Announced June 5, 2014

As Modified on Denial of Rehearing July 3, 2014

§ 24–51–1105, C.R.S. 2013.

See also 2014 WL 2526570.

Faegre Baker Daniels, LLP, John R. Sperber, Brandee L. Caswell, Sarah M. Kellner, Denver, Colorado, for Petitioner–Appellee.

Dean & Reid, LLC, Daniel W. Dean, Fort Collins, Colorado; Polsinelli, Bennett L. Cohen, Denver, Colorado, for Respondents–Appellants.

Opinion by JUDGE DAILEY

¶ 1 In this condemnation action, respondents, Lauren Sandberg, Kay F. Sandberg, Ivar E. Larson, and Donna M. Larson (collectively, the landowners), appeal various district court orders, including its denial of interest on attorney fees and costs, its transfer of a surface damage bond to another case, and its dismissal of the action on the request of petitioner, Sinclair Transportation Company d/b/a Sinclair Pipeline Company (Sinclair). We affirm.

## I. Background

¶ 2 Sinclair owns a pipeline system that transports petroleum products from Wyoming to Denver. To operate this system, Sinclair uses an easement that passes through the landowners' properties. Sinclair initiated the present condemnation proceeding to secure the rights to (1) lay a second pipeline on the landowners' properties and (2) use some of their property which, though underlying the original pipeline, turned out not to be within the easement. The district court determined that Sinclair had condemnation authority to build the new pipeline and entered an order allowing Sinclair to take immediate possession of the properties to install it while continuing to use the original pipeline. In 2007, Sinclair installed the new pipeline, but did not put it into use.

¶ 3 Five years later, the supreme court concluded that Sinclair did not have statutory condemnation authority under section 38–5–105, C.R.S.2013. *See Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶ 1, 284 P.3d 42. On remand, the landowners sought $192,573.95 in attorney fees and costs, as well as interest on those fees and costs. Before the court ruled on this motion, Sinclair voluntarily paid all of the requested fees and costs. Upon Sinclair's objection, however, the district court determined that the landowners were not entitled to recover interest on their attorney fees and costs.

¶ 4 Sinclair filed a notice of abandonment of condemnation proceedings, as well as a separate declaratory judgment action. In the declaratory judgment action, Sinclair sought both (1) to enjoin the landowners from removing the new pipeline and (2) rec-

ognition of its rights under the easement to operate the new pipeline in lieu of the old one.

¶ 5 The landowners objected to Sinclair's abandonment of the condemnation action and moved to file an amended pleading in that action containing counterclaims, including trespass, breach of contract, and surface damage caused by the installation of the new pipeline. They also sought to consolidate the two actions, to obtain the removal or disabling of the new pipeline, and to obtain summary judgment on surface damages caused by the installation of the new pipeline.

¶ 6 The district court denied the landowners' motions and dismissed the condemnation action, informing the parties that they could raise—and the court (acting through the same judge) would consider—any remaining claims or counterclaims in the declaratory judgment action. The landowners complied with this instruction and filed identical counterclaims.

### II. Interest on Attorney Fees

¶ 7 The landowners contend that the district court erred in denying them an award of interest on their attorney fees and costs. We disagree.

¶ 8 The landowners requested attorney fees and costs under section 38–1–122, C.R.S. 2013, which directs a district court to award fees and costs to a property owner if "[it] finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding." Without waiting for an order from the district court, Sinclair paid the $192,573.95 in fees and costs that had been requested by the landowners. The payment was accepted by the landowners.

¶ 9 The landowners had also requested an award of interest on those fees and costs. The district court determined, however, that they were not entitled to such an award.

¶ 10 "The right to interest, absent an agreement to pay it, is purely statutory, and is limited to those circumstances set forth in the statute." *Bd. of Cnty. Comm'rs v. Shell W. E & P, Inc.*, 12 P.3d 1219, 1220–21 (Colo. App.2000).

¶ 11 Here, the landowners assert that they were entitled to an award of interest on their fees and costs under:

- section 38–1–116, C.R.S.2013, measured from the date of the order allowing Sinclair to take immediate possession of the properties (July 2007); or, alternatively,

- section 5–12–106, C.R.S.2013, measured from the date the district court erroneously entered judgment recognizing a condemnation authority in Sinclair (May 2008).

¶ 12 Neither statute provides a basis for recovering interest here.

¶ 13 Section 38–1–116 has nothing to do with attorney fees and costs. It awards prejudgment interest to a landowner who has been awarded "just compensation" for a taking of his or her land; it "is designed only to compensate that owner for any possible difference between the value of the property as of the date that the condemning authority takes possession of the property and any payment made to the owner at that time." *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 992 P.2d 1188, 1200 (Colo.App. 1999), *rev'd on other grounds*, 17 P.3d 797 (Colo.2001); *see also City of Colorado Springs v. Andersen Mahon Enters., LLP*, 251 P.3d 536, 539 (Colo.App.2010) (the purpose of section 38–1–116 "is to compensate a party for the loss of use of money not deposited into the court registry" for the fair value of the condemned property). The recovery upon which interest could accrue under section 38–1–116—that is, the fair value of condemned property—is different from, and does not include, attorney fees and costs. *See Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17 P.3d 797, 802 (Colo.2001) ("Just compensation reflects the value of the landowner's lost [property] interest ...."); *see also E–470 Pub. Highway Auth. v. Revenig*, 91 P.3d 1038, 1041 (Colo.2004) ("[T]he just compensation guarantee entitles a landowner whose property is taken or damaged 'to receive the value of what he has been deprived of, and nothing more.'" (quoting *Alexander v. City & Cnty. of Denver*, 51 Colo. 140, 144, 116 P. 342, 344 (1911))).

¶ 14 Section 5–12–106 authorizes the recovery of postjudgment interest on a money judgment that remains unsatisfied during the pendency of an appeal filed by a "judgment debtor," i.e., the party liable for the judgment. *See Indian Mountain Metro. Recreation & Park Dist. v. J.P. Campbell & Assocs.*, 921 P.2d 65, 66–67 (Colo.App.1996). But where no money "judgment" is entered to which the statute could apply, a claim for postjudgment interest under this section is properly rejected. *In re Estate of Beren*, 2012 COA 203M, ¶ 151, —— P.3d —— (*cert. granted in part* Sept. 9, 2013); *Shell W. E & P, Inc.*, 12 P.3d at 1221. And no money judgment is entered "when attorney fees are awarded, not as damages, but to shift the burden of litigation," until the court enters a final order quantifying the amount of fees or costs. *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 389–90 (Colo.App.2006) (distinguishing prejudgment from postjudgment interest under sections 5–12–102 and 5–12–106, respectively).[1]

¶ 15 The district court never entered any kind of monetary order or judgment in the landowners' favor that would have made Sinclair a "judgment debtor" with respect to fees and costs. Sinclair paid the landowners their fees and costs before any judgment or order could be entered. Consequently, there was no judgment on which interest under section 5–12–106 could accrue. *Cf. In re Marriage of Gutfreund*, 148 P.3d 136, 140 (Colo.2006) (obligation to pay interest under the statute terminates upon making funds accessible to judgment creditor).

¶ 16 Accordingly, we, like the district court, conclude that the landowners were not entitled to interest on the attorney fees and costs paid by Sinclair.

### III. Order of Dismissal

¶ 17 We are also unpersuaded by the landowners' contention that the district court erred in dismissing this condemnation action instead of consolidating it with the declaratory judgment action.

¶ 18 In its order dismissing the condemnation action, the district court ruled that "[b]ecause condemnors have an absolute right to abandon condemnation proceedings at any point before title has vested, and because title has not yet vested in this case, Sinclair's notice of abandonment has the effect of dismissing [the condemnation action]." It also ruled that C.R.C.P. 41 was not applicable to the dismissal, but that even if it were, "good cause" existed to dismiss the condemnation action.

¶ 19 In a condemnation proceeding, a condemnor ordinarily "retains the right to abandon the project and discontinue the proceedings at any time before payment or deposit of the sum awarded as compensation, notwithstanding that the condemnor may already have procured an order for possession and may actually have taken possession." *City of Black Hawk v. Ficke*, 215 P.3d 1129, 1131 (Colo.App.2008); *see also Johnson v. Climax Molybdenum Co.*, 109 Colo. 308, 310, 124 P.2d 929, 931 (1942) (even where a petitioner has been awarded possession of condemned property, he or she "may discontinue such possession upon the abandonment of the [condemnation action] at any time before he has secured a vested right to the property condemned, when reciprocally the landowner acquires a vested right to compensation for the taking").

¶ 20 And where there are additional claims to be resolved that relate to the condemnation suit, such as liability for surface damages caused by a condemnation petitioner who takes possession of land and later abandons the suit, they are ordinarily prop-

---

1. In their opening brief, the landowners assert that their attorney fees should be considered "damages," rather than costs associated with ordinary burden of undertaking litigation. For two reasons, we do not address this assertion:
   - It has not been properly presented to us—it is presented without any developed argument and it is supported by only the most generic citation of authority. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); and,
   - the landowners never raised this issue before the district court. *See Sterenbuch v. Goss*, 266 P.3d 428, 435 (Colo.App.2011) ("[A]rguments not presented to or ruled on by the district court cannot be raised for the first time on appeal.").

erly resolved in another action. *See John-son,* 109 Colo. at 311, 124 P.2d at 931 (a claim for damages stemming from the trespass committed by a condemnation petitioner who abandons its suit "involve[s] essentials, both in the pleading and trial thereof, not properly subjects for consideration in a condemnation proceeding under our statute").

¶ 21 Additional claims ordinarily must be resolved in a separate suit because of the special nature of statutory condemnation proceedings. *See In re Marriage of Gutfreund,* 148 P.3d at 140 (noting that "eminent domain cases are governed by special statutory procedures"); *see also Denver & N.O.R. Co. v. Lamborn,* 8 Colo. 380, 383, 8 P. 582, 584 (1885) (an eminent domain action "is a special proceeding, differing widely in its purposes from those of the ordinary civil action, and governed by dissimilar rules of pleading and practice").

¶ 22 We qualify the above propositions with the term "ordinarily" because a condemnor has no right to require re-configuration of the proceedings "when the landowner has materially changed his or her position in good faith reliance on the condemnation proceeding." *See Ficke,* 215 P.3d at 1131. In this case, however, the landowners never asserted such a position in the district court, nor, so far as we can tell, would the record support such a conclusion. Consequently, we perceive no error in the district court's dismissal of the condemnation action.

¶ 23 In reaching this conclusion, we necessarily reject the landowners' assertion that *Ficke* and *Johnson* are inapplicable here because, after the supreme court determined that Sinclair lacked condemnation authority under section 38–5–105, "the case was no longer a condemnation action." The landowners overlook, the fact that Sinclair had originally asserted condemnation authority not only under section 38–5–105, but also under section 38–4–102, C.R.S.2013. Because the supreme court had decided that Sinclair lacked authority to condemn property only under the former, and not the latter, provision, the case remained, even under the landowners' theory, "a condemnation action."

¶ 24 Consequently, we, like the district court, conclude that Sinclair had a right to abandon its condemnation action because title to the condemned land had never vested; and that any counterclaims the landowners wished to assert in connection with surface or trespass damages could be resolved in a separate action. *See Johnson,* 109 Colo. at 311, 124 P.2d at 931; *Ficke,* 215 P.3d at 1131.

¶ 25 Moreover, even if, as the landowners assert, the district court's decision to dismiss the case were governed by C.R.C.P. 41(a)(2), we would discern no error.

¶ 26 We review for an abuse of discretion a court's order granting a voluntary dismissal of an action under C.R.C.P. 41(a)(2). *See FSDW, LLC v. First Nat'l Bank,* 94 P.3d 1260, 1265 (Colo.App.2004). A court abuses its discretion when its decision rests on a misunderstanding or misapplication of the law, *Genova v. Longs Peak Emergency Physicians, P.C.,* 72 P.3d 454, 458 (Colo.App.2003), or when its decision is manifestly arbitrary, unreasonable, or unfair, *Goodman Assocs., LLC v. WP Mountain Props., LLC,* 222 P.3d 310, 314 (Colo.2010).

¶ 27 Under C.R.C.P. 41(a)(2), a court may dismiss an action upon a plaintiff's motion "upon such terms and conditions as [it] deems proper." However, "[i]f a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." *Id.*

¶ 28 Here, Sinclair formally notified the court and the landowners of its intent to abandon the condemnation proceeding before the landowners attempted to inject any counterclaims into the case: Sinclair filed its notice of intent to abandon in November 2012, and the landowners filed their request to amend their pleadings in January 2013. Moreover, the district court informed the landowners that they could present any and all counterclaims they might have in the declaratory judgment action. Thus, the court ensured that a forum would be available for an independent adjudication of the landowners' counterclaims.

¶ 29 A plaintiff's request for a voluntary dismissal under C.R.C.P. 41(a)(2) "generally should be granted unless a dismissal would result in legal prejudice to the defendant." *Powers v. Prof'l Rodeo Cowboys Ass'n,* 832 P.2d 1099, 1102 (Colo.App.1992). In determining whether legal prejudice would result, a court should consider the following factors:

(1) the duplicative expense of a second litigation

(2) the extent to which the current suit has progressed, including the effort and expenses incurred by defendant in preparing for trial

(3) the adequacy of plaintiff's explanation for the need to dismiss

(4) the plaintiff's diligence in bringing the motion to dismiss

(5) any "undue vexatiousness" on plaintiff's part.

*Id.* at 1103.

¶ 30 Although the landowners assert that a "second lawsuit was unnecessary" and "harmful" to them, none of the expenses relating to their counterclaims had to be incurred in this case. Sinclair had notified the landowners of its intent to abandon the proceeding, and they could have raised their counterclaims, along with the other motions they now consider unnecessarily duplicative, in the declaratory judgment action alone. That they chose to incur additional expenses, after having received notice that Sinclair intended to abandon the present case and institute another, appears to be an instance of self-inflicted injury.

¶ 31 Further, since landowners had, at the time, not been granted permission to file any additional claims in this case, there was no cause for concern regarding substantial time (apart from that for which they had already been paid fees and costs) spent preparing for trial on those claims.

¶ 32 Nor would the record support a finding of "vexatious" behavior on Sinclair's part:

Sinclair sought to abandon the condemnation suit shortly after it was returned to the district court on remand from the supreme court.

¶ 33 Even so, the landowners claim prejudice from "the loss of judicial admissions made in [the condemnation case], the loss of Law of the Case limitations and the inherent delay in resolving damage claims occasioned by the necessity of another appeal." They do not, however, identify either the "judicial admissions" or "law of the case limitations" that would be lost, nor how those matters might be "lost." Nor do they attempt to explain how substantial delay in resolving their damage claims would occur as a result of having to present them in the declaratory judgment action. These arguments are not, then, properly before us on appeal. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

¶ 34 Because we perceive no legal prejudice to the landowners as a result of the dismissal, we discern no abuse of the court's discretion in dismissing the condemnation action. *Cf. Fed. Deposit Ins. Corp. v. Bowen,* 865 P.2d 868, 872 (Colo.App.1993) (court's refusal to consolidate was not an abuse of discretion where the defendant's interests were adequately protected in separate proceedings).

### IV. Surface Damage Bond

¶ 35 Next, the landowners argue that the court erred by not determining their surface damages and applying the surface damage bond, which Sinclair had deposited with the court to reimburse them for such damages, prior to dismissal of the condemnation action.[2]

¶ 36 Sinclair deposited a surface damage bond with the court in this case pursuant to section 38–1–101.5(1)(b), C.R.S.2013, which

---

2. Contrary to Sinclair's assertion, the landowners preserved this issue for review by requesting, in their motion for summary judgment on surface damage, "immediate release of the surface damage bond ... in partial satisfaction" of any judgment issued by the court for its surface damages. *See* C.R.C.P. 46 ("[I]t is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor. . . .").

requires that "[w]hen a court is determining the necessity of taking private land or non-federal public land for the installation of a pipeline, the court shall require the pipeline company ... [t]o post a bond with the court equal to double the amount which the court determines to be the estimated cost of restoring the affected land to the same or as good a condition as it was in prior to the installation of the pipeline."

¶ 37 In denying the landowners' motion for summary judgment on surface damages, the court noted that (1) the parties agreed at oral argument that there were issues of material fact regarding the surface damages and (2) such issues could be resolved in the declaratory judgment action. It also determined that the surface damage bond and additional money deposited by Sinclair as security for its taking of immediate possession of the property would be transferred to the court registry for the declaratory judgment action "as security for the damages claims, if any, Landowners may be entitled to for Sinclair's prior construction activities associated with the installation of the 10 inch line and for its right to possess and use Landowner's property pursuant to the Court's immediate possession orders."

¶ 38 As we have concluded above, the district court correctly decided that any determination of surface or trespass damages could—and should—be made as part of the separate, declaratory judgment. *See Johnson,* 109 Colo. at 311, 124 P.2d at 931 (damage claims resulting from an abandoned condemnation action are properly considered in another action).

¶ 39 Nonetheless, the landowners argue that the court "effectively released" the bond by transferring it, and that "[t]he bond now exists without any conditions attached to its release." We do not interpret the court's order to have had such an effect. The court's order merely transferred the bond to a different proceeding. It established that the bond would only be used to satisfy the landowners' surface damage claims in the declaratory judgment action. Thus, any future release of the bond would comply with

the statutory requirement that the court be "satisfied that the condemned land has been restored to the same or as good a condition as existed prior to the installation of the pipeline ... and that any damages awarded by the court have been paid." § 38–1–101.5(1)(b).

¶ 40 Consequently, we perceive no error from the court's transferring the surface damage bond to the declaratory judgment action. *See Johnson,* 109 Colo. at 311, 124 P.2d at 931 (where a petitioner abandons its condemnation action, the surface damage bond in that action may be properly held as security for the property owner's damage claims in a separate suit).

### V. Other Issues

¶ 41 The other substantive issues raised by the landowners are the product of rulings made by the district court in the separate declaratory judgment action. They are, then, subject to consideration, if at all, only in the appeal of the district court's rulings in that action.[3] Consequently, we will not address them here.

### VI. Attorney Fees Incurred on Appeal

¶ 42 The landowners argue that they are entitled to attorney fees on appeal pursuant to section 38–1–122. However, because the orders appealed here do not address Sinclair's authorization to condemn, section 38–1–122 does not apply. *See Wilkinson v. Gaffney,* 981 P.2d 1121, 1123 (Colo.App.1999) (section 38–1–122 "simply authorizes the court to award fees to the respondent property owner if the petitioner is not authorized by law to acquire the real property interests sought").

### VII. Conclusion

¶ 43 The judgment of dismissal and orders are affirmed.

JUDGE CASEBOLT and JUDGE BERGER concur.

---

3. The declaratory judgment action is itself the subject of a separate appeal, also decided today.