Opinion by JUDGE FREYRE
¶ 1 Sometimes a retail marijuana business wishes to grow the marijuana it sells. To do so legally in Denver, such a business must be located in a zone that permits both cultivation and retail sales, and it must obtain a zoning permit from Denver's Zoning Authority. Additionally, such a business must obtain a retail marijuana cultivation (RMC) license from the Director of the Denver Department of Excise and Licenses (Department), which is subject to an annual renewal process.
¶ 2 This case involves the interplay between a zoning permit and a RMC license. Plaintiff, Colorado Health Consultants, d/b/a Starbuds (Starbuds), appeals from the district court's judgment affirming the Department's decision to deny Starbuds' 2016 RMC license renewal application. For the reasons described below, we affirm.
I. Background
¶ 3 Starbuds is a retail marijuana business located in an I-MX-3 zone-a special context zone for industrial mixed use. In March 2013, the zoning authority issued Starbuds a zoning permit for retail sales. The application included attached floor plans identifying retail space on the first floor and a "veg" and "bloom" space on the second floor. Starbuds separately applied with the Department for a RMC license. The Department issued the RMC license in March 2014.
¶ 4 The following year, Starbuds sought renewal of the RMC license and, after an uncontested hearing required by Denver Revised Municipal Code (D.R.M.C.) section 6-214(a)(3), *120 the Department renewed Starbuds' RMC license.
¶ 5 Starbuds again sought renewal on February 17, 2016. Because changes to the D.R.M.C. no longer mandated a hearing, but allowed one in the Department's discretion, the Department immediately renewed the RMC license. However, several days later, the Department discovered that an interested party had requested a hearing on Starbuds' license renewal. The Department then notified Starbuds that based on this request, it needed to schedule a public hearing. Starbuds agreed to the hearing, which occurred on April 25, 2016. However, during the hearing, Starbuds changed course. It argued that it sought renewal under D.R.M.C. section 6-214(a)(1) and that this provision did not authorize the Department to conduct a hearing.
¶ 6 At the hearing, six witnesses opposed the renewal. Starbuds' managing member and owner testified in support of the renewal. The hearing officer also accepted petitions containing signatures of neighborhood residents, both in opposition to and in support of the renewal.
¶ 7 In a detailed written recommendation, the hearing officer applied D.R.M.C. section 6-214(a)(3) and recommended that the Department deny Starbuds' request to renew the RMC license. She first found that plant husbandry was not a permitted use in an I-MX-3 zone and that the Department had issued the original license in error.[1] She then rejected Starbuds' assertion that plant husbandry was a permitted "accessory use" under section 6-214(a)(1) and, instead, found that the RMC license was subject to the requirements of section 6-214(a)(2) and (3). After weighing the evidence, the hearing officer found that the opposition had established, by a preponderance of the evidence, that Starbuds failed to satisfy four of the five requirements for renewal under section 6-214(a)(3). Consequently, she recommended that the Department deny Starbuds' RMC license renewal application. After considering Starbuds' formal objections to the hearing officer's recommendation, the Department adopted the hearing officer's findings and denied Starbuds' renewal application.
¶ 8 Starbuds filed a C.R.C.P. 106(a)(4) complaint in the Denver District Court alleging that the Department did not have the authority to hold a public hearing on its renewal application because plant husbandry was a permitted accessory use in an I-MX-3 zone. Starbuds also alleged that the Department was equitably estopped from denying its renewal application and that the Department's denial was an unconstitutional taking. The district court affirmed the Department's order, found that equitable estoppel did not apply, and concluded that the denial was not an unconstitutional taking.
II. The Department Properly Denied Starbuds' RMC License Renewal Application
¶ 9 Starbuds first contends that the Department abused its discretion and legally erred in concluding that plant husbandry is not a permitted accessory use in an I-MX-3 zone and that its zoning permit did not authorize plant husbandry. Specifically, Starbuds argues that its license is governed by D.R.M.C. section 6-214(a)(1), which does not permit a public hearing, rather than section 6-214(a)(2) and (3), under which the Department denied its application. Because Starbuds concedes that it did not meet the requirements of section 6-214(a)(2) and (3), we need not analyze those provisions further. Instead, we conclude that the Department's findings and conclusions under those provisions also support denial under section 6-214(a)(1). We therefore affirm the Department's order and the district court's judgment, albeit on a slightly different basis.
A. Standard of Review
¶ 10 C.R.C.P. 106(a)(4) provides as follows:
Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded *121 its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:
(I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.
Thus, in a C.R.C.P. 106(a)(4) action, "judicial review of a governmental agency exercising its quasi-judicial role ... is limited to whether the body has exceeded its jurisdiction or abused its discretion." City of Commerce City v. Enclave W., Inc. , 185 P.3d 174, 178 (Colo. 2008). We sit in the same position as the district court when reviewing an agency decision under C.R.C.P. 106(a)(4). Marshall v. Civil Serv. Comm'n , 2016 COA 156, ¶ 10, 401 P.3d 96 ; Roalstad v. City of Lafayette , 2015 COA 146, ¶ 13, 363 P.3d 790. We review de novo whether the agency abused its discretion. Roalstad , ¶ 13.
¶ 11 An agency abuses its discretion if its decision is not reasonably supported by any competent evidence in the record, or if the agency has misconstrued or misapplied applicable law. Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't , 196 P.3d 892, 899-900 (Colo. 2008) ; Roalstad , ¶ 13. An action by an agency is not arbitrary or an abuse of discretion when the reasonableness of the agency's action is open to a fair difference of opinion, or when there is room for more than one opinion. Bennett v. Price , 167 Colo. 168, 172, 446 P.2d 419, 420-21 (1968).
¶ 12 Generally, a reviewing court should defer to the agency's construction of a law it is charged with enforcing. City & Cty. of Denver v. Bd. of Adjustment , 55 P.3d 252, 254 (Colo. App. 2002). And we presume that the governing body intended a just and reasonable result. Steamboat Springs Rental & Leasing, Inc. v. City & Cty. of Denver , 15 P.3d 785, 787 (Colo. App. 2000).
¶ 13 "In reviewing the agency's construction, we rely on the basic rules of statutory construction, affording the language of the provisions at issue their ordinary and common sense meaning." Enclave W., Inc. , 185 P.3d at 178. "Our primary task in interpreting statutes and municipal enactments is to give effect to the intent of the drafters, which we do by looking to the plain language." Waste Mgmt. of Colo., Inc. v. City of Commerce City , 250 P.3d 722, 725 (Colo. App. 2010). If the language of the provision at issue is clear and the intent of the legislative body that enacted it may be discerned with certainty, we may not resort to other rules of statutory interpretation. Id. When construing an ordinance in the C.R.C.P. 106(a)(4) context, "we give effect to every word and, if possible, harmonize potentially conflicting provisions." Enclave W., Inc. , 185 P.3d at 178.
¶ 14 Our review of the agency's factual, discretionary determinations is more deferential. We must uphold the Department's decision unless there is no competent evidence in the record to support it. Carney v. Civil Serv. Comm'n , 30 P.3d 861, 863 (Colo. App. 2001).[2] "No competent evidence" means that the Department's decision is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." Id. (quoting Bd. of Cty. Comm'rs v. O'Dell , 920 P.2d 48, 50 (Colo. 1996) ); accord Turney v. Civil Serv. Comm'n , 222 P.3d 343, 347 (Colo. App. 2009). "An action by an administrative [body] is not arbitrary or an abuse of discretion when the reasonableness of the [body's] action is open to a fair difference of opinion, or when there is room for more than one opinion." Khelik v. City & Cty. of Denver , 2016 COA 55, ¶ 13, 411 P.3d 1020. Because we are not the fact finder, we "cannot weigh the evidence or substitute our own judgment for that of the [administrative body]." Kruse v. Town of Castle Rock , 192 P.3d 591, 601 (Colo. App. 2008).
B. RMC Licensing
¶ 15 It is unlawful to cultivate, manufacture, distribute, or sell retail marijuana, except *122 in compliance with the terms, conditions, limitations, and restrictions set forth in article XVIII, section 16 of the Colorado Constitution and in the Colorado Retail Marijuana Code (CRMC). § 12-43.4-102(2), C.R.S. 2017. The General Assembly has authorized the Executive Director of the Department of Revenue (Director) to regulate and control the licensing of the cultivation, manufacture, distribution, and sale of medical and retail marijuana. §§ 12-43.3-201, 12-43.4-201, C.R.S. 2017. The Director may grant or refuse state licenses for cultivation and may suspend, fine, restrict, or revoke such licenses, whether active, expired, or surrendered, upon a violation of the CRMC or any rule promulgated pursuant to the CRMC. § 12-43.4-202(2)(a), C.R.S. 2017. The Director may also hear and determine, at a public hearing, any contested state license denial and any complaints against a licensee. § 12-43.4-202(2)(c).
¶ 16 Additionally, the Colorado Constitution permits local governments to (1) prohibit state licensing of marijuana establishments; (2) regulate the time, place, and manner in which marijuana establishments may operate; and (3) limit the total number of marijuana establishments within its jurisdiction. Colo. Const. art. XVIII, § 16 (5)(f); D.R.M.C. § 6-200. The Department is Denver's designated local licensing authority for retail marijuana establishments. D.R.M.C. §§ 6-204, 32-2(a). Its authority includes the licensing of several kinds of local marijuana establishments. D.R.M.C. § 6-200.[3] Indeed, the purpose of D.R.M.C.'s chapter 6, article V, the "Denver Retail Marijuana Code," "is to exercise the authority of the City and County of Denver to allow state-licensed marijuana establishments to exist in Denver in accordance with applicable state laws and regulations as well as the additional local licensing requirements and other restrictions set forth herein." Id. (emphasis added).
¶ 17 Upon receipt of a RMC license application, the Department must determine, among other things, whether the applicant's location complies with the applicable zoning and land use laws for retail marijuana establishments. See D.R.M.C. § 6-209(a)(1); see also D.R.M.C. § 32-10. The Department must deny any application that does not fully comply with the CRMC, the D.R.M.C., and any other applicable state or city law or regulation. D.R.M.C. § 6-210(a).
¶ 18 As relevant here, a RMC license requires that the retail marijuana establishment be located in a zone "where, at the time of application for the license, plant husbandry is authorized as a permitted use under the zoning code." D.R.M.C. § 6-214(a)(1). However, notwithstanding subsection (a)(1), the Department may issue a RMC license where plant husbandry is not a permitted use if (1) plant husbandry is already occurring as a compliant or nonconforming use under the zoning code; (2) a zoning permit was applied for upon the same zone lot on or before July 1, 2010; (3) the applicant can demonstrate that an optional premises cultivation license upon the same zone lot was applied for with the state medical marijuana licensing authority on or before August 1, 2010; and (4) the applicant can produce documentary evidence that the cultivation of medical marijuana had commenced on the zone lot prior to January 2011. D.R.M.C. § 6-214(a)(2).
¶ 19 If requested by an interested party, the Department may hold a public hearing on any RMC license granted under subsection (a)(2). D.R.M.C. § 6-214(a)(3). Under D.R.M.C. section 6-214(a)(3), a RMC license shall be eligible for renewal in a nonconforming location unless a preponderance of the evidence demonstrates that (1) the existence of the RMC facility has frustrated the implementation of the city's comprehensive plan and any adopted neighborhood plan applicable to the subject property; (2) the existence of the RMC facility has negatively affected nearby properties or the neighborhood in general; (3) the existence of the RMC facility has caused crime rates to increase in the surrounding neighborhood; (4) the continued existence of the RMC facility will have deleterious impact on public health, safety, and *123 the general welfare of the neighborhood or city; or (5) the applicant or any person from whom the applicant acquired a retail marijuana business failed to meet one or more of the requirements specified in subsection (a)(2).
¶ 20 Additionally, upon receiving a license renewal application, the Department "may, upon [its] own motion or upon complaint, hold a hearing concerning any application for license renewal." D.R.M.C. § 32-20(c). Moreover, in addition to "any other grounds specified in [the D.R.M.C.] which authorize the [Department] to fail to renew a license, the [Department] may refuse to renew a license" if, as relevant here, "[a]ny fact or condition exists which, if it had existed or been known at the time of the application for such license, would have warranted the [Department] in refusing originally to issue such license." D.R.M.C. § 32-20(d)(2).
C. Zoning Requirements
¶ 21 The Denver Zoning Code regulates primary and accessory land uses in the City of Denver. All primary land uses are organized into five classifications: (1) residential uses; (2) civic, public, and institutional uses; (3) commercial sales, service, and repair uses; (4) industrial, manufacturing, and wholesale uses; and (5) agriculture. Denver Zoning Code § 11.12.1.1. As relevant here, "agriculture" includes "cultivation, production, keeping, or maintenance for personal use, donation, sale or lease, of ... plants...." Denver Zoning Code § 11.12.6(A).
¶ 22 Plant husbandry constitutes "[a]n agriculture use ... in which plants are cultivated or grown for the sale of such plants or their products, or for their use in any other business, research, or commerce .... This includes the cultivation or growing of marijuana." Denver Zoning Code § 11.12.6(B)(4). "The general land use classifications and use categories listed ... are intended to be mutually exclusive...." Denver Zoning Code § 11.12.1.3.
¶ 23 The Zoning Code also defines certain accessory uses to primary residential and nonresidential uses. Denver Zoning Code §§ 11.12.7, 11.12.9. An accessory use is one that is "clearly incidental, subordinate, customary to, and commonly associated with operation of a primary use." Denver Zoning Code § 11.7.1.1(A). It is a use so necessary or commonly to be expected in conjunction with the primary use that no ordinance could be interpreted in a way to prevent it. City of Sheridan v. Keen , 34 Colo. App. 228, 232, 524 P.2d 1390, 1392 (1974). Further, an accessory use is one deemed to be permitted by implication where the ordinance is silent on the particular use in issue. Id. The concept of accessory use relieves the municipality from attempting to enumerate every possible approved use, and it allows courts to determine, on a case-by-case basis, whether permission for the proposed accessory use has been impliedly granted. Lieb v. Trimble , 183 P.3d 702, 704-05 (Colo. App. 2008) (citing City of Sheridan , 34 Colo. App. at 232, 524 P.2d at 1392 ). It follows, therefore, that a use expressly prohibited by the Zoning Code cannot be an accessory use. Id. at 705.
¶ 24 Because Starbuds is located in an industrial mixed-use zone, the provisions of article 9 of the Denver Zoning Code apply. Article 9 contains a Use and Parking Table (Table) that identifies primary uses, accessory uses, and temporary uses. Denver Zoning Code § 9.1.5.5. In an I-MX-3 zone, plant husbandry is designated as "NP," id. , which means that plant husbandry "is not permitted in the [I-MX-3] zone district." Denver Zoning Code § 9.1.5.3(B)(3).
¶ 25 The Table also identifies certain accessory uses to nonresidential uses. Denver Zoning Code § 9.1.5.5. It indicates that unlisted accessory uses are subject to the provisions of section 11.10.1. Section 11.10.1 states that the "Zoning Administrator shall determine and impose limitations on accessory uses not otherwise listed as permitted" and that "[a]ll such determinations shall be reviewed according to the procedures and review criteria stated [in] Section 12.4.6." Denver Zoning Code § 11.10.1.1(A), (B). Section 12.4.6 establishes a procedure for determining whether a particular accessory use may be permitted in a zone district and provides that the Zoning Administrator "shall be the *124 final decision-maker for all Code Interpretations and Determinations of Unlisted Uses." Denver Zoning Code § 12.4.6.2. As relevant here, the Zoning Administrator must provide its interpretations and determinations to the applicant in writing. Denver Zoning Code § 12.4.6.3(E)(4). Finally, section 12.4.6 states that it "shall not apply to permit any specific use that is expressly prohibited in a zone district or by this Code's provisions." Denver Zoning Code § 12.4.6.1(B).
D. Application
1. Plant Husbandry is Not a Permitted Accessory Use
¶ 26 The parties agree that the Denver Zoning Code unambiguously prohibits plant husbandry as a primary use in an I-MX-3 zone. Starbuds contends, however, that marijuana cultivation is a permitted, unlisted accessory use, based on the Zoning Administrator's issuance of its retail sales permit. The Department rejected this argument and found that Starbuds' retail sales permit made no mention of plant husbandry and listed only "retail sales" as the proposed use. It further found that Starbuds presented no evidence that the Zoning Administrator had interpreted the Denver Zoning Code to include plant husbandry as an unlisted accessory use to its retail permit. Although we agree with the Department's finding that plant husbandry was not a permitted accessory use, we do so on slightly different grounds. Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe , 107 P.3d 402, 406 (Colo. App. 2004) (we may affirm on any grounds supported by the record).
¶ 27 The Zoning Code expressly prohibits plant husbandry as a primary use in an I-MX-3 zone. And, because a primary use expressly prohibited by the Zoning Code cannot be an accessory use, Lieb , 183 P.3d at 705, we conclude that plant husbandry is necessarily prohibited as an unlisted accessory use. See id.
¶ 28 We are not persuaded by Starbuds' contention that the Zoning Administrator's issuance of a retail sales permit with attached floor plans identifying "bloom" and "veg" rooms demonstrates the Zoning Administrator's written approval of plant husbandry as an unlisted accessory use under Denver Zoning Code section 12.4.6. First, as noted by the Department, the term "plant husbandry" does not appear anywhere on the permit. Next, the Zoning Authority lacks the legal authority to "permit any specific use that is expressly prohibited in a zone district." Denver Zoning Code § 12.4.6.1(B); see also Lieb, 183 P.3d at 705. And consistent with this absence of legal authority to thwart the Zoning Code, Starbuds' permit states, "This permit does not make the growing of marijuana for medical purposes, or any other purpose, legal."
¶ 29 Accordingly, we conclude that the Department reasonably interpreted the Zoning Code in deciding that plant husbandry is prohibited as a primary and as an accessory use in an I-MX-3 zone and in denying Starbuds' RMC license renewal application.
2. Subject Matter Jurisdiction
¶ 30 Starbuds next challenges the Department's subject matter jurisdiction to conduct a hearing under D.R.M.C. section 6-214(a)(2) and (3) given that the Department could only have issued the RMC license under section 6-214(a)(1), which contains no hearing provision. Initially, we disagree with Starbuds that the Department issued its RMC license under section 6-214(a)(1). This section applies only if plant husbandry is a permitted use. And, as discussed above, plant husbandry is not a permitted primary or accessory use in an I-MX-3 zone.
¶ 31 Next, we need not decide whether the Department properly conducted a hearing under section 6-214(a)(3), because it separately possessed the discretionary authority to conduct a hearing under section 32-20. See Johnson v. Civil Serv. Comm'n , 2018 COA 43, ¶ 32, 417 P.3d 963 (considering whether the Commission reached the right result for the wrong reasons); see also Rush Creek Sols., Inc. , 107 P.3d at 406.
¶ 32 Chapter 32, article I of the D.R.M.C. concerns licenses generally, and it empowers the Department to "grant, renew, suspend during investigation and revoke after notice and hearing thereon" the licenses *125 issued under its authority. D.R.M.C. § 32-1. And, D.R.M.C. section 32-20(c) allows the Department to conduct a hearing on its own motion or by request if "[a]ny fact or condition exists which, if it had existed or had been known to exist at the time of the application for such license, would have warranted the director in refusing originally to issue such license." D.R.M.C. § 32-20(d)(2) (emphasis added).
¶ 33 As previously stated, plant husbandry is not a permitted primary or accessory use in an I-MX-3 zone, and therefore, Starbuds was never eligible to receive a RMC license in the first instance under section 6-214(a)(1) or any other provision of the D.R.M.C.[4] Because the Department's previous issuance of Starbuds' RMC license was in error, the record demonstrates that "if [this error] had ... been known to exist at the time of the application for such license, [it] would have warranted the [Department] in refusing originally to issue such license." D.R.M.C. § 32-20(d)(2).
¶ 34 We are not persuaded by Starbuds' contention that section 32-20(d)(2) is a more general provision that must give way to the more specific provisions of chapter 6, article V. See § 2-4-205, C.R.S. 2017. First, this rule only applies if the general provision conflicts with the special or local provision. § 2-4-205 ; see also Carson v. Reiner , 2016 CO 38, ¶ 14, 370 P.3d 1137. Second, we must construe any conflict between the general and specific provision so as to give effect to both. § 2-4-205 ; see also Carson , ¶¶ 14, 18. Because nothing in section 6-214(a)(1) precludes the Department from holding a hearing, it does not conflict with the Department's authority to conduct hearings on license renewals generally under chapter 32.
¶ 35 Accordingly, we affirm the Department's refusal to renew Starbuds' RMC license because this license was never permitted under chapter 6, article V of the D.R.M.C.
III. Equitable Estoppel
¶ 36 Starbuds next contends that the district court erroneously found that the doctrine of equitable estoppel did not apply to provide it relief. We are not persuaded.
A. Standard of Review and Applicable Law
¶ 37 The doctrine of equitable estoppel is founded on principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result. Crawford v. McLaughlin , 172 Colo. 366, 376, 473 P.2d 725, 730 (1970).
¶ 38 Whether the circumstances of a particular case reveal a representation and reasonable reliance on that representation that gives rise to equitable estoppel is a question of fact for the district court. City of Black Hawk v. Ficke , 215 P.3d 1129, 1132 (Colo. App. 2008). We must accept findings of fact on review unless they are clearly erroneous. Id. A court clearly errs when there is no support in the record for its finding. Hanson v. Colo. Dep't of Revenue , 140 P.3d 256, 258 (Colo. App. 2006).
¶ 39 It is well established in Colorado that the doctrine of equitable estoppel may be applied against a municipality. Keen , 34 Colo. App. at 232, 524 P.2d at 1393 (citing City & Cty. of Denver v. Stackhouse , 135 Colo. 289, 293, 310 P.2d 296, 298 (1957) ). However, estoppel may not be invoked as freely against a municipal corporation as against an individual. Stackhouse , 135 Colo. at 293, 310 P.2d at 298 ; Jones v. City of Aurora , 772 P.2d 645, 647 (Colo. App. 1988) ; Keen , 34 Colo. App. at 232-33, 524 P.2d at 1393.
¶ 40 The party alleging equitable estoppel must show that he or she changed a position, to his or her detriment, in justifiable reliance on the city's conduct. Jones , 772 P.2d at 647 ; Keen , 34 Colo. App. at 233, 524 P.2d at 1393 (citing Crawford , 172 Colo. at 376, 473 P.2d at 731 ). Further, the party to be estopped must have intended that its representation *126 be acted on so that the other party was justified in relying on the represented facts. Ficke , 215 P.3d at 1131. Finally, the party asserting estoppel must be ignorant of the actual facts and must have reasonably relied, to its own detriment, on the other party's conduct or misrepresentation. Id.
B. Analysis
¶ 41 The district court found that the Department had mistakenly renewed Starbuds' 2016 RMC license without a hearing after it discovered emails sent before the renewal by persons requesting a hearing to protest the renewal. At that point, the Department was required to hold a public hearing before it could approve Starbuds' application. The court rejected Starbuds' assertion that it had invested additional resources to operate its business during the period between initial approval and the hearing setting. It found that Starbuds provided no information identifying or explaining these additional resources and that it presented no facts to support its assertion. Further, the court found it "unlikely that Starbuds detrimentally changed its position in the nine days between the application approval and its revocation." The record supports the district court's findings.
¶ 42 Starbuds now contends that the Department's decision to hold a hearing caused an injury. It argues that it detrimentally relied on the zoning permit to start and operate its cultivation business, and that it has now lost the cultivation business solely because of the Department's decision. We are not persuaded.
¶ 43 First, Starbuds did not make this precise argument in the district court, and we are not inclined to consider arguments made for the first time on appeal. See Am. Family Mut. Ins. Co. v. Allen , 102 P.3d 333, 340 n.10 (Colo. 2004). Nevertheless, because the district court made equitable estoppel findings, we address the equitable estoppel issue.
¶ 44 The record supports the district court's finding that the Department mistakenly issued the RMC license in the first instance, and Starbuds presented no evidence to the contrary. Although Starbuds alleged detrimental reliance, it presented no evidence to support this assertion or to show that its reliance on an unlawfully issued license was reasonable.
¶ 45 Moreover, Starbuds is not ignorant of the provisions of Denver's Zoning Code, which have consistently prohibited plant husbandry in an I-MX-3 zone. Accordingly, Starbuds cannot be deemed to have reasonably relied, to its own detriment, on the Department's conduct or misrepresentation. See Ficke , 215 P.3d at 1131. We therefore reject Starbuds' equitable estoppel contention and affirm the district court's ruling.
IV. No Unconstitutional Taking Occurred
¶ 46 Starbuds last contends that the Department's denial of its RMC license constituted an unconstitutional taking because it had a reasonable expectation of continued licensure and did not receive due process. We disagree with both contentions.
A. Standard of Review and Applicable Law
¶ 47 The application of a constitutional standard is a question of law that we review de novo. City of Golden v. Parker , 138 P.3d 285, 289 (Colo. 2006).
¶ 48 "A taking occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property." City of Northglenn v. Grynberg , 846 P.2d 175, 178 (Colo. 1993). The party asserting an unconstitutional taking must show a unique or special injury that is different from, or not common to, the general public. Id. at 179. The injury must affect some right or interest that the owner enjoys in connection with the property and that is not shared by the public generally. Id.
[A] vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."
*127 Ficarra v. Dep't of Regulatory Agencies , 849 P.2d 6, 16 (Colo. 1993) (quoting People ex rel. Eitel v. Lindheimer , 371 Ill. 367, 21 N.E.2d 318, 321 (1939) ). However, there is no vested right in the renewal of a license. Id. ; City of Manitou Springs v. Walk , 149 Colo. 43, 45, 367 P.2d 744, 745 (1961) (holding that no licensee under the Fermented Malt Beverages Act has a vested right to renewal of a license); Bd. of Cty. Comm'rs v. Buckley , 121 Colo. 108, 117, 213 P.2d 608, 612 (1949) ("Any licensee who invests his time and substance in the liquor business does so with full knowledge that he has no assurance ... and he acts at his peril and assumes the risk that his license may not be granted or renewed."); see also D.R.M.C. § 32-19 ("No license shall extend beyond one (1) year from the date of its issuance and shall expire on the date specified on the license.").
¶ 49 Further, the due process and just compensation clauses of the Colorado and Federal Constitutions do not require that zoning ordinances permit a landowner to make the most profitable use of his or her property. Bird v. City of Colorado Springs , 176 Colo. 32, 37, 489 P.2d 324, 326 (1971). The landowner bears the burden of showing that he or she has been deprived of all reasonable uses of his or her land. Id. If the land in question is susceptible to any reasonable or lawful use under the classification imposed by the city, then the ordinance will be allowed to stand, and an unconstitutional taking does not occur. Id. at 37, 489 P.2d at 326-27.
¶ 50 While a licensing authority may not deny a renewal arbitrarily or capriciously, if a full hearing is granted, the question of renewal becomes one for the exercise of discretion of the licensing authority, and it may refuse to renew such license upon good cause shown. A licensee is entitled to "due process protection, of which the minimum requirements include notice and an opportunity to be heard." Price Haskel, Inc. v. Denver Dep't of Excise & Licenses , 694 P.2d 364, 366 (Colo. App. 1984). "Although due process rights attach to a licensing hearing, these rights are necessarily diluted because of the strong state interest in [retail marijuana] control and the added safeguards provided by judicial review." Fueston v. Cityof Colorado Springs , 713 P.2d 1323, 1326 (Colo. App. 1985) ; see § 12-43.4-102(1).
B. Analysis
¶ 51 Starbuds acknowledges the holding in Ficarra , which concludes that there is no vested interest in the renewal of a license. 849 P.2d at 9. Nevertheless, it argues that the facts in Ficarra are distinguishable from the Department's denial of Starbuds' license. According to Starbuds, the licensees in Ficarra became disqualified from licensure due to a change in the law, whereas in the instant case, the law has always required Starbuds to have zoning approval to hold a RMC license. We are not persuaded.
¶ 52 True enough, there has been no change in the law disqualifying Starbuds from licensure. Instead, the initial license was issued in error under existing law prohibiting plant husbandry in an I-MX-3 zone. But, the reasoning in Ficarra relies on the Buckley opinion, which is factually analogous to the instant case.
¶ 53 In Buckley , the licensee applied for and received a liquor license for two consecutive years. 121 Colo. at 110, 213 P.2d at 609. However, when she applied for renewal in the third year, the licensing board denied renewal because it was concerned about the propriety of operating a liquor establishment in a rural area. Id. at 111-12, 213 P.2d at 609-10. Our supreme court upheld the board's denial of the license, concluding that there was no vested interest in a license renewal and reasoning that anyone who held a liquor license did so without assurances and at his or her own peril, assuming the risk that his or her license may not be renewed. Id. at 117, 213 P.2d at 612. The court reached this conclusion despite the board's concession that there had been no change in the factual circumstances or in the law. Id. at 111, 213 P.2d at 609.
¶ 54 Similarly, Starbuds' previous renewals created no vested interested in subsequent renewals because Starbuds held its RMC license with no assurances and at its own peril, assuming the risk that its license would not be renewed. See id="p128" href="#p128" data-label="128" data-citation-index="1" class="page-label">*128id. at 117, 213 P.2d at 612. Indeed, section 24-503(e) of the D.R.M.C. states, "No person shall be deemed to have any entitlement or vested right to licensing under this article XII or the [Colorado Medical Marijuana Code] by virtue of having received any prior license or permit from the city...."
¶ 55 Finally, Starbuds has not shown that it has been deprived of all reasonable uses of its land by the Department's denial of its RMC renewal application. Nothing precludes its continued operation as a retail establishment-the primary use for which it was zoned.
¶ 56 Nevertheless, Starbuds relies on Board of Regents of State Colleges v. Roth , 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to argue that it has a vested property right in a business license where there is a reasonable expectation of continued licensure based upon meeting eligibility criteria for the license. In so doing, it contends that section 12.4.1.6 of the Zoning Code indicates that the license runs with the land. We disagree.
¶ 57 The relevant provision of section 12.4.1.6 states that "an approved zoning permit authorizing a permitted use shall expire if a building permit has not been issued within the 180-day time period.... After the use is validly established, an approved zoning use permit shall run with the land except as otherwise restricted by this Code ." Denver Zoning Code § 12.4.1.6(A)(2) (emphasis added).
¶ 58 First, this provision applies to zoning permits (not at issue here), and not RMC licenses. Second, even if it could be construed to apply to RMC licenses, such a license must be "validly established" and not "otherwise restricted by [the] Code." As previously explained, the Department issued Starbuds' RMC license in error and contrary to both the Zoning Code and the D.R.M.C. Finally, Roth held that property rights derive from statute and that the statute at issue provided no mechanism for a hearing for a non-tenured university employee. 408 U.S. at 577, 92 S.Ct. 2701. It then concluded that the plaintiff in Roth held only an "abstract concern in being rehired," which was insufficient to require the university to provide a hearing. Id. at 578, 92 S.Ct. 2701.
¶ 59 Here, Denver's Zoning and Municipal Codes, derived from statute, specifically preclude a vested right in the renewal of a license. Even so, the Department afforded Starbuds due process by conducting a public hearing after notice and by affording Starbuds the opportunity to present evidence and testimony in support of renewal. See Van Sickle v. Boyes , 797 P.2d 1267, 1273-74 (Colo. 1990) ("Due process requires, at a minimum, notice and the opportunity for a meaningful hearing before an impartial tribunal."). Indeed, Starbuds (1) cross-examined witnesses in opposition to the renewal; (2) submitted several petitions containing the signatures of neighborhood residents and business owners supporting its license renewal; and (3) presented testimony in favor of the license renewal. The hearing officer and the Department considered this evidence in issuing the recommended and final decisions. Therefore, Starbuds' reliance on Roth is misplaced.
¶ 60 Accordingly, we conclude that the Department's denial of Starbuds' RMC license renewal application did not constitute an unconstitutional taking.
V. Conclusion
¶ 61 The judgment is affirmed.
JUDGE TERRY and JUDGE NAVARRO concur.

At the uncontested renewal hearing in 2015, the hearing officer made this same observation and recommended that the Department investigate whether cultivation was a permitted use in an I-MX-3 zone before renewing Starbuds' RMC license. The record does not reflect whether this occurred.

Under this standard, the appropriate consideration for an appellate court is whether there is sufficient evidentiary support in the record for the administrative body's decision, not whether there is adequate evidence to support the decision of the district court. Ross v. Fire & Police Pension Ass'n , 713 P.2d 1304, 1309 (Colo. 1986).

The Department may issue marijuana licenses for (1) a retail marijuana store; (2) a retail marijuana cultivation facility; (3) a retail marijuana products manufacturer; (4) a retail marijuana testing facility; (5) a retail marijuana transport; and (6) a retail marijuana off-premises storage facility. D.R.M.C. § 6-207.

The parties agree that Starbuds does not meet the licensing requirements of D.R.M.C. section 6-214(a)(2) and (3).